634 A.2d 756

### RICHLAND TOWNSHIP

v.

### PRODEX, INC. and Earl Hellerman, Sr. and Earl Hellerman, Jr., Appellants.

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 1993.

Decided Nov. 24, 1993.

Douglas C. Maloney, for appellants.

Francis X. Bushchman, Jr. and Douglas M. Johnson, for appellee.

Before COLINS and PELLEGRINI, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

Prodex, Inc. and its principal owners (Prodex) appeal from an order of the Court of Common Pleas of Bucks County dismissing post-trial motions and making absolute a decree nisi enjoining Prodex from certain manufacturing operations and storage on real property located in Richland Township (Richland).

Prodex owns what is designated as Parcel One, located on the north side of Cherry Road in Richland, and is the lessee of what is designated as Parcel Two, located on the south side of Cherry Road and on the west side of Nice Road. Prodex operates a metal fabrication business on these properties. A building for the business exists on Parcel One. The business is conducted out in the open on Parcel Two. Prodex is apparently also a tenant at will of adjacent areas to the west designated as Parcel Three and Parcel Four.[1]

Richland brought an equity action against Prodex seeking to enjoin it from activities on the properties related to the operation of its metal fabricating business. Richland alleged that Prodex had substantially expanded a legal nonconforming use of Parcel Two without a special exception, in violation of the local zoning ordinance, and that Prodex was violating provisions of the ordinance relating to dust, fumes, dazzling light, noise levels and junk yards.

Prodex was engaged in metal fabrication on both Parcels One and Two prior to the enactment of the local zoning ordinance in 1972. In 1975, this ordinance was superseded by Richland's adoption of the Quakertown Area Zoning Ordi-

1. Parcel Three is located on the west side of Parcel Two, on the south side of Cherry Road, and Parcel Four is on the west side of Parcel One, on the north side of the road. Railroad tracks running in a north to south direction bisect Parcel Four and form the approximate border between Parcel Three and Parcel Two.

nance. Richland has subsequently amended its portion of the ordinance. The area in question was originally zoned HC (highway commercial) and VC (village center) and is currently zoned RA (rural agricultural). According to Richland, none of these zoning classifications provide for the type of heavy industrial manufacturing engaged in by Prodex; the area in use prior to the 1972 ordinance would be a legal nonconforming use, but any extension of that area for the use would be prohibited by the ordinance absent a special exception.

In 1975, a justice of the peace found Prodex guilty of violating two provisions of the zoning ordinance and imposed a fine.[2] Prodex appealed the conviction and received a hearing *de novo* in the Bucks County Court of Common Pleas. The trial court there determined that Prodex had a legal nonconforming use of Parcel One and a certain portion of Parcel Two. The court concluded that Prodex had doubled the size of its pre-ordinance usage of Parcel Two and thus violated the ordinance's prohibition against expanding a nonconforming use without a special exception. The court also found Prodex had violated the ordinance's prohibition against producing a strong, dazzling light beyond the property lines. Prodex appealed to this Court and we affirmed the trial court's decision as to both violations. *Richland Township v. Heller-man*, 30 Pa.Commonwealth Ct. 438, 373 A.2d 1367 (1977).[3]

In 1977, Richland filed a complaint in equity against Prodex similar to the complaint now at issue. A hearing was held on a petition for preliminary injunction but no further action was taken until 1985, when the case was terminated pursuant to

2. The ordinance at this time provided:

Any person, partnership or corporation who or which shall violate the provisions of any zoning ordinance enacted under this act or prior enabling laws shall, upon conviction thereof in a summary proceeding, be sentenced to pay a fine of not more than five hundred dollars ($500). In default of payment of the fine, such person, the members of such partnership, or the officers of such corporation shall be liable to imprisonment for not more than (60) days. Each day that a violation is continued shall constitute a separate offense.

3. Our decision addressed Prodex's argument as to the expansion of the legal nonconforming use. We did not consider the dazzling light issue as we found it was not properly preserved for appeal.

then existing Pennsylvania Rule of Judicial Administration 1901.

In 1990, Richland instituted the current action. The trial court held hearings and found that the earlier trial court decision of 1975 had designated an area of one hundred and twenty-five feet deep from Cherry Road as the area of legal nonconformity on Parcel Two. The court found that Parcel Two was being used well beyond the one hundred and twenty-five foot area. The court also found that Prodex was engaged in heavy steel construction and storage in plain view and close proximity to nearby residences, creating an obvious negative effect. Specific negative effects on adjacent properties included bright glare in the daytime from arc welding, metal dust from grinding operations and excessive noise levels from pounding metal.

The trial court concluded that under the zoning ordinance Prodex had no right to use areas on Parcel Two beyond the designated one hundred and twenty-five foot area absent a special exception. The court also concluded that the negative effects of the metal operations, including shearing, grinding and pounding, were in violation of the zoning ordinance and, in the alternative, constituted a public nuisance. The court stated that the storage of metal materials, including supplies and scrap debris, was also in violation of the zoning ordinance and constituted a public nuisance.

Finding that Prodex had caused and would continue to cause irreparable harm to the community, the trial court issued a decree nisi granting a permanent injunction. The order permanently enjoined Prodex from conducting business activities on Parcel Two beyond the one hundred and twenty-five foot limit; producing glare, metal dust or excessively loud noise beyond the boundaries of Parcel Two; and storing or manufacturing on Parcels Three and Four. In addition, all stored materials, remnants and debris on the areas enjoined from use and storage were ordered removed.

Prodex filed post-trial motions. The trial court dismissed the motions and made its decree nisi absolute. Prodex

now appeals to this Court.[4]

## I. Permitted Use As A "Mill"

◼ Prodex first argues that its operation is in fact a permitted use under the current ordinance, which zones the area rural agricultural, because the ordinance permits the use of a "mill" in a rural agricultural zone and defines "mill" as a "[m]ill, where grain, lumber and similar products are processed." It cites our prior decision holding that "[t]his Court has consistently held that ambiguous or undefined terms in a zoning ordinance which restrict a permitted use shall be construed broadly so as to give the landowner the benefit of the least restrictive use." *Appeal of Shirk,* 114 Pa.Commonwealth Ct. 493, 497, 539 A.2d 48, 50 (1988). It also cites Section 603.1 of the Pennsylvania Municipalities Planning Code (MPC),[5] 53 P.S. § 10603.1, which provides that language of zoning ordinances "shall be interpreted, where doubt exists as to the intended meaning . . . in favor of the property owner and against any implied extension of the restriction."

Prodex submits that the dictionary meaning of "mill" includes a steel mill, that the word is commonly used to refer to a steel mill and that a lumber mill is capable of being as busy, dusty and noisy as a steel mill. Prodex argues that, at best, the term is ambiguous in the ordinance and the burden was on Richland to draft an ordinance restricting the use in question; Richland could have limited the definition of "mill" to agricultural products if it had wished, but it did not.

Richland responds that the dictionary definition of mill does not include a steel mill.[6] More importantly, it argues that it

4. In reviewing a final decree in equity, this Court's scope of review is limited to determining whether the chancellor's findings are supported by substantial evidence, whether there was an error of law committed or whether the chancellor committed an abuse of discretion. *Northview Motors, Inc. v. Commonwealth of Pennsylvania, Attorney General,* 128 Pa.Commonwealth Ct. 54, 562 A.2d 977 (1989), *petition for allowance of appeal denied,* 525 Pa. 605, 575 A.2d 570 (1990).

5. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11201.

6. The trial court's opinion states that the definition of "mill" in Webster's Ninth New Collegiate Dictionary refers only to agricultural opera-

defies common sense to argue a steel mill should be a permitted use in an area zoned rural agricultural.

Although Prodex's arguments are facially compelling, we conclude that its metal manufacturing operations are not a permitted use under the ordinance. The clearest construction of the ordinance is that it allows, in a rural agricultural setting, a limited amount of products to be "processed." Those products include grain and lumber and other "similar products"—a term which we read most naturally to mean products of the land. This interpretation is consistent with the specific terms "grain," "lumber" and "processed"[7] and is in keeping with the character of the zoned area. "Steel" is simply not a "similar product" to "grain" and "lumber." To seek out ambiguity in the ordinance and to hold that metal fabrication is included in the ordinance's scheme would simply be stretching an interpretation beyond what is the clearest interpretation discernible from the express provisions of the ordinance.

In *Appeal of Shirk*, a true ambiguity existed where there was no definition of the term "existing road" in the relevant zoning ordinance. In that circumstance, we upheld the trial court in its conclusion that the zoning board should not have restrictively construed the term "existing road" as meaning only a road existing at the time of the ordinance's adoption. *Id.* That was the type of case where application of the doctrine underlying Section 603.1 of the MPC was warranted. This is a different case. Here, the intended meaning of the ordinance is sufficiently clear.

tions and a building for manufacturing—neither of which exist on Parcel Two.

7. It is questionable whether activities such as arc welding and spray painting metal, for instance, which were performed in the open air of Parcel Two, qualify as the processing of products. The word "processed" seems readily to connote grain processing and lumber processing but seems somewhat out of place when applied to welding, spray painting and other activities of a metal fabricator.

## II. Laches And Variance By Estoppel

■ Prodex next advances the defenses of laches and variance by estoppel, claiming that it has been prejudiced by Richland's failure since 1977 to enforce the zoning ordinance.

■ For a party to prevail on the defense of laches, it must prove both inordinate delay and prejudice from that delay. *Sprague v. Casey*, 520 Pa. 38, 550 A.2d 184 (1988). On the question of delay, we note that the 1977 enforcement action did not terminate until 1985. Moreover, Richland directs us to extensive correspondence in the record between counsel for both parties. There is specific correspondence between December 22, 1977 and April 1, 1981, consisting of efforts to negotiate a settlement by which Prodex would cure the alleged violations on its property. This evidence makes it at least questionable as to whether the type of inordinate delay necessary to support a claim of laches was present in this case. However, we see no reason to decide the question of inordinate delay because it is clear that any prejudice that occurred was a result of Prodex's own actions.

■ This is not a case where, suddenly and without notice, after an inordinate delay, a party is met with an action for enforcement of a right. By virtue of the 1975 proceeding and the institution of the 1977 proceeding alone, Prodex was or should have been aware that its actions were objectionable to Richland and that an enforcement such as the instant one might be instituted at any time. Prodex also knew that it was violating the findings of the 1975 proceeding and was acting contrary to what it had already been penalized for in a court of law. Therefore, while Prodex argues that evidence has been lost due to the time lapse in this case, any resulting prejudice to Prodex must be attributed to its own lack of responsiveness to enforcement action.[8]

8. Moreover, as discussed below, the inevitable loss over time of both the quantity and the quality of evidence, which not only affects Prodex but affects Richland as well, weighs in favor of applying the doctrine of collateral estoppel. Use of the collateral estoppel doctrine, in turn, obviates the need to reproduce evidence from past proceedings. For reasons explained below, we agree with the trial court's use of the

■ Prodex also argues that the doctrine of variance by estoppel is applicable and thereby creates a vested right in it to use the property in violation of the ordinance. Variance by estoppel requires that a party innocently and in good faith relied on the validity of its use. *Schuylkill Township v. Overstreet,* 107 Pa.Commonwealth Ct. 492, 529 A.2d 551 (1987), *petition for allowance of appeal denied,* 517 Pa. 627, 538 A.2d 879 (1988). In that there is a judgment against it for illegal expansion of a nonconforming use, Prodex clearly fails to satisfy this requirement.

We agree with the trial court that, far from actively acquiescing in Prodex's activities, Richland has been attempting to redress the same or similar activities it has viewed as problematic. Beginning with the proceeding and subsequent judgment in 1975, Prodex has been on notice that its actions could result in similar enforcement proceedings. Viewing the procedural history of this case, it would be a great leap to hold that Prodex is entitled to use the doctrines of laches or variance by estoppel.

### III. Collateral Estoppel

■ Prodex argues in the alternative that it is entitled to a new trial because the trial court used the previous 1975 summary conviction as a basis for its finding on the extent of the legal nonconforming use on Parcel Two. Richland argues that the trial court properly employed the doctrine of collateral estoppel, precluding relitigation of an issue of fact or law previously litigated, because all the elements of that doctrine have been met. The trial court correctly set out those elements as (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue

collateral estoppel doctrine in this case. Thus, Prodex's argument that it has been prejudiced by the difficulty of reproducing evidence presented at the 1975 hearing is rendered questionable, if not irrelevant.

in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. *City of Pittsburgh v. Zoning Board of Adjustment of Pittsburgh*, 522 Pa. 44, 55, 559 A.2d 896, 901 (1989).

We think it is obvious from the facts of this case that all these elements have been met, and therefore we need not discuss at length Prodex's contention to the contrary. Prodex does contend that the court's finding in 1975 as to the extent of the legal nonconforming use was not essential to that judgment, as all that needed to be proven there was that the actual amount of use exceeded the area properly available for nonconforming use. However, on appeal of that judgment, we held that "[c]onsidering the court's prerogatives as factfinder, we conclude that no error or abuse of discretion is even remotely evident in the court's finding that appellants' prezoning use was confined to approximately 130 feet of the lot's extension along Nice Street." *Richland Township*, 30 Pa.Commonwealth Ct. at 441, 373 A.2d at 1369. We thus have previously explicitly affirmed the finding of fact now in issue. Indeed, a judgment of excessive use could not have stood without that finding of fact.[9]

Prodex nevertheless argues that, even if the elements of collateral estoppel have been met, the doctrine cannot be applied to summary criminal proceedings because records of "lesser" criminal convictions are inadmissible to establish facts in a subsequent civil case. *Hurtt v. Stirone*, 416 Pa. 493, 206 A.2d 624 (1965), *cert. denied*, 381 U.S. 925, 85 S.Ct. 1561, 14 L.Ed.2d 684 (1965).

For many years, the rule in Pennsylvania was that judgments in criminal cases were inadmissible to establish the facts in a civil case. *Id.* at 497, 206 A.2d at 626. The Supreme Court in *Hurtt* essentially created an exception to

9. We must note that the one hundred and twenty-five foot line established by the trial court in the present case may be somewhat generous as far as Prodex is concerned, given the fact that the trial court in the 1975 proceeding noted there was "credible evidence to establish that no more than one-quarter of the lot in question had been utilized prior to zoning." *Richland Township v. Hellerman* (No. 140 (Misc.) 1975, filed July 30, 1975), slip op. at 5.

that rule. It allowed a defendant's conviction for extortion to be used against the defendant in a subsequent civil trial to prove conclusively the fact of extortion. In creating the exception, the Court applied principles of public policy, writing:

The defendant was presented with more than ample opportunity to overcome the charges lodged against him while he was swathed in a cloak of presumed innocence. His case was twice presented to a federal jury which found him guilty of extortion beyond a reasonable doubt, upon the same facts which are now urged as the basis for his civil liability. To now hold that the effect of those jury determinations is *nil* not only would be to fly in the face of reason, but also would be a general indictment of the whole American jury system. We are not now prepared to say that the mere technical effect of the doctrines of res judicata and collateral estoppel regarding identity of parties is sufficient to overcome the policy which requires us to give conclusive effect to the prior conviction herein. The defendant should not now be heard to deny that which was established by his prior criminal conviction, without proof that his conviction was procured by fraud, perjury or some manner of error now sufficient to upset the conviction itself. Defendant has had his day in court and has failed to instill even a reasonable doubt in the collective mind of his then jury.

*Id.* at 498–499, 206 A.2d at 626. In suggesting that the exception to the traditional rule was a limited one, the Supreme Court wrote:

[W]e recognize a valid existing distinction in cases involving the record of conviction of relatively minor matters such as traffic violations, lesser misdemeanors, and matters of like import. Especially in traffic violations, expediency and convenience, rather than guilt, often control the defendants 'trial technique.' In such cases, it is not obvious that the defendant has taken advantage of his day in court, and it would be unreasonable and unrealistic to say he waived that right as to a matter (civil liability), which was probably not within contemplation at the time of the conviction....

> The policy shifts with regard to major criminal convictions such as the one presented. We find it incredible in such a situation that a defendant would present less than his best defense, knowing that his failure would result in the loss of substantial property, or even his liberty.

*Hurtt,* 416 Pa. at 499, 206 A.2d at 627.

Recently, the Supreme Court was faced with the issue of whether a conviction for a summary offense is conclusive in a later civil proceeding when the summary offense is a necessary operative fact in a non-summary conviction. *Folino v. Young,* 523 Pa. 532, 568 A.2d 171 (1990). The Court in *Folino* arguably extended the *Hurtt* exception to the traditional rule, allowing the defendant's conviction for the summary offense of driving at an unsafe speed, which was an operative fact in the defendant's conviction for vehicular homicide, to be used against him in a civil negligence suit. *Id.* Moreover, the Supreme Court wrote that its "decision in *Hurtt* illustrates that the court sought to insure that the party bound by the prior determination had adequate incentive to contest the issue and an adequate forum in which to litigate." *Id.* at 536, 568 A.2d at 173.

The Supreme Court in *Folino* did reiterate, however, "the strong sentiment expressed in *Hurtt,* and later applied in *Loughner v. Schmelzer,* 421 Pa. 283, 218 A.2d 768 (1966), that convictions for summary offenses by themselves, where an accused is not entitled to a jury trial, are inadmissible." *Folino,* 523 Pa. 532, 537, 568 A.2d 171, 173–174.[10]

10. This Court has had occasion to apply the exception to the traditional rule as set out in *Hurtt* and *Folino.* For example, we have cited these cases in holding that "when a summary offense conviction is a necessary element of a felony or misdemeanor conviction it can be introduced at administrative hearings as conclusive evidence and should be given the same level of legal significance as the more serious crime. Therefore, in such cases involving workmen's compensation, if the non-summary conviction involved can be deemed a 'violation of law,' the summary offense is also a 'violation of law' under the [Workmen's Compensation] Act." *Burger King v. Workmen's Compensation Appeal Board (Boyd),* 134 Pa.Commonwealth Ct. 547, 553, 579 A.2d 1013, 1016 (1990).

Two other decisions also involving administrative proceedings have implied that *Hurtt* is distinguishable in that it applies to civil proceed-

With the preceding case law in mind, we now examine several important aspects of the case before us. The first important fact is that Prodex appealed its summary conviction. Not only did it appeal it once, to the trial court, where Prodex received a *de novo* hearing, but it appealed it again, to this Court. Importantly, and as noted above, on appeal we explicitly affirmed the finding of fact now in issue. Furthermore, Prodex had obviously taken advantage of its day in court, an important concern in *Hurtt*. It is difficult to accept the argument now that it did not have the incentive to use and did not in fact use its best trial technique then, an important consideration in *Folino*.[11] While we agree with Prodex that the language in *Hurtt* is not limited to traffic violations, we think there is some justification for distinguishing the defendant in this case from the defendant who receives a speeding ticket and would rather pay the fine than bother to contest it.

A second important fact in this case is that, unlike in most cases, including *Hurtt* and *Folino*, the parties in both the criminal proceeding and the civil proceeding are the same. Coupled with the obviously full and fair opportunity to litigate that Prodex in fact received, the decision on the merits, and other factors outlined above as being necessary for the use of the collateral estoppel doctrine, this case appears to be well

ings rather than administrative proceedings. *Zong v. Insurance Department*, 150 Pa.Commonwealth Ct. 66, 614 A.2d 360 (1992); *Appeal of McClellan*, 82 Pa.Commonwealth Ct. 75, 475 A.2d 867 (1984).

In the unemployment compensation context, we cited *Hurtt* and *Folino* in affirming the Unemployment Compensation Board of Review's decision finding no willful misconduct on the part of a claimant, where the Board had accepted the claimant's testimony that he had not harassed a co-worker despite the claimant's summary conviction for harassment. *Phoenixville Area School District v. Unemployment Compensation Board of Review*, 141 Pa.Commonwealth Ct. 555, 596 A.2d 889 (1991), *petition for allowance of appeal denied*, 529 Pa. 671, 605 A.2d 335 (1992).

11. Prodex states that the 1975 decision was "merely an annoyance that resulted in relatively minor fines." We are skeptical about the implication from this statement that Prodex did not have an incentive to employ its best 'trial technique' or to prevail in that proceeding, particularly in light of its appeal for a hearing *de novo* and its subsequent appeal to this Court. We think the taking of two appeals attests to the seriousness with which a party views a matter.

suited to the use of the doctrine. We recognize that some of the language in *Hurtt* can be read to suggest that a party may be unable to use the doctrine even if all of the elements are satisfied; for example, the Court in *Hurtt* did not find that a defendant lacks a full and fair opportunity to litigate a lesser offenses, but did state that the defendant might not have the incentive to take full advantage of that opportunity due to the very nature of the proceeding.[12] In this regard, then, the statements in *Hurtt* pertaining to lesser offenses could be considered to constitute another element which must be met in order to apply the collateral estoppel doctrine or a general exception to the use of the doctrine. On the other hand, it is a reasonable notion that the doctrine in turn has some effect on the statements set forth in *Hurtt*. In fact, the holding in *Hurtt*, far from limiting collateral estoppel, broadens the use of collateral estoppel, making it applicable to establish conclusive evidence against a defendant and abridging to some degree the technical mutuality of parties element required for the use of the doctrine.[13]

A third important point in this case, and one alluded to by the trial court, is that the issue in *Hurtt* was specifically framed as follows: "In a civil suit against a convicted extortioner to recover the extorted money, is *proof of the conviction of the extortion* conclusive evidence of the fact of extortion?" *Hurtt*, 416 Pa. at 496, 206 A.2d at 625 (emphasis added); moreover, in *Folino*, the Supreme Court referred to "*convictions* for summary offenses." *Folino*, 523 Pa. 532, 537, 568 A.2d 171, 173 (emphasis added). In this case, by contrast, the trial court did not use the 1975 *judgment* as conclusive evidence of a *1975* civil violation, but instead used an operative *finding* of fact from the past proceeding as one element in establishing a *new* violation.

We find no authority on whether the rule here involved is or is not limited to disallowing only the criminal judgment itself

12. By contrast, however, the Court in *Folino* stressed the importance of "an adequate forum." *Folino*, 523 Pa. at 536, 568 A.2d at 173.

13. Prodex, therefore, is in the interesting position of using language in *Hurtt* in support of its argument to *limit* collateral estoppel.

and not also the facts establishing that judgment. The same is true of the question of whether the rule is meant to preclude the introduction of prior adjudicated facts as part of an attempt to prove a new violation. Without guidance one way or the other, this case on its face seems distinguishable from the rule proscribing the introduction of records of convictions to show civil liability arising from the same criminal violation.[14]

Finally, in attempting to distinguish *Hurtt* and subsequent cases, the trial court stated that the 1975 proceedings were in fact in the nature of civil proceedings and should not have been classified as summary criminal proceedings. To the most limited sense of this argument we disagree.[15] This Court's prior decision specifically began by stating that "Appellants [Prodex] . . . were convicted in summary proceedings of violating certain provisions of the Richland Township Ordinance of 1972." *Richland Township*, 30 Pa.Commonwealth Ct. at 439, 373 A.2d at 1368. The trial court hearing which resulted in the conviction was in the Criminal Division of the Court of Common Pleas. Whether the nature of the prior proceeding was such that it should have been classified differ-

**14.** The lack of precedent on the subject is most likely due to the fact that the situation involved in this case is a rare one. The rarity is in turn no doubt due in part to the fact that the 1975 proceeding was somewhat akin to a civil matter and the several proceedings together do not fit well with the factual situations involved in the *Hurtt* line of cases.

**15.** The trial court's rationale is not without merit. In many ways the 1975 proceeding was more akin to a civil matter than a criminal matter. In fact, Section 617.2 of the MPC now provides:

Any person, partnership or corporation who or which has violated or permitted the violation of the provisions of any zoning ordinance enacted under this act or prior enabling laws shall, *upon being found liable in a civil enforcement proceeding* commenced by a municipality, pay a judgment of not more than $500 plus all court costs, including reasonable attorney fees incurred by a municipality as a result thereof. No judgment shall commence or be imposed, levied or payable until the date of the determination of a violation by the district judge. If the defendant neither pays nor timely appeals the judgment, the municipality may enforce the judgment pursuant to the applicable rules of civil procedure. . . .

53 P.S. § 10617.2 (emphasis added). The existence of this provision since 1988 makes the situation involved in this case unlikely to arise again in the future.

ently is of no moment because it was in fact classified and treated as a summary criminal proceeding and, at the time, Prodex could have no cause to consider it as anything else.

However, in a broader sense, the trial court's rationale is directly on point. How long can a summary criminal proceeding still be considered summary and/or criminal? Further, does the term "summary criminal proceeding" automatically, on its own, without any other consideration, make *Hurtt* and *Folino* applicable to bar the use of collateral estoppel? These questions are answered by our preceding discussion, which makes it clear that in this case there are important factors distinguishing it from the reading of *Hurtt* and *Folino* advanced by Prodex. The important aspects of this case set forth above, including the *de novo* hearing, the appeal to this court, the collateral estoppel rationale, the use of a fact against a mutual party rather than the record of a judgment and the nature of the prior proceeding, all weigh heavily against the reliance upon and, indeed, the applicability to this case of, the decisions cited by Prodex.

In sum, we glean from *Hurtt* and *Folino* that while felony charges are the basis for collateral estoppel in many instances, convictions arising from most lesser criminal proceedings should not be used because of the possibility that such proceedings do not provide the incentive or the opportunity for a full-scale defense. However, *Folino* teaches us that even summary offenses, when they provide sufficient incentive and opportunity for a defense, may be the basis of collateral estoppel—as, for instance, when they are part of another important charge.

Applying these principles to the case now before us, we conclude that the trial court did not commit an error or law or an abuse of discretion where it applied collateral estoppel. We do accept Prodex's argument that the 1975 proceeding was a summary offense. Our previous decision makes that clear. However, we do not accept Prodex's statement that the prior proceeding was "merely an annoyance" or that Prodex did not have the incentive or the opportunity to defend. As we have

said, Prodex not only appealed to the common pleas court, where it engaged in a trial *de novo,* but it also appealed to this Court. These actions are objective evidence militating against its alleged subjective intent regarding the seriousness of the 1975 proceedings.

In addition to these legal reasons for applying collateral estoppel in this instance, the very issue involved provides a practical reason for the application of the doctrine. The critical factual issue to be resolved was the extent of the area of Parcel Two Prodex used before the passage of the zoning ordinance in 1972. It cannot be disputed that the time element alone would make it more likely that evidence to explore this issue, including eyewitness testimony, would be more available in 1975 than in the 1990's.

In view of the entire circumstances, we hold that the trial court committed no error in applying collateral estoppel as to the extent of Prodex's legal nonconforming use on Parcel Two.

### IV. *Twenty Percent Expansion Allowance*

Both parties agree that the ordinance permits a twenty percent expansion of nonconforming use land area as a matter of right, without a special exception. The trial court order made no provision for this. It is evident that some provision must be made for the ordinance's expansion allowance and therefore we shall modify the trial court's order accordingly.

The remaining question is how to calculate the amount of the twenty percent expansion allowance. Prodex argues that the expansion amount should be calculated on the legal nonconforming land areas of both Parcel One and Parcel Two. Richland states that the calculation should be based only on the legal nonconforming land area of Parcel Two.

Section 703(a) of the ordinance provides that "[a] use or structure that does not conform with the requirements of the District in which it is located may be extended 20% in floor area, land area, or building volume existing at the time the use became nonconforming . . . ." There does not appear in this

provision any authority for restricting the provision to only some of the existing land area in 1972 upon which there was a nonconforming use. In fact, Richland has not supplied a reason for such a restrictive reading; it merely states its position without arguing why the calculation should not include the area of Parcel One. Furthermore, the underlying doctrine of construing certain zoning provisions liberally in favor of the landowner, discussed above in regard to construing the "mill" provision, only adds to our reluctance to accept Richland's method of calculation. Under these circumstances, we shall not accept that method.

Accordingly, we will modify the trial court order so that it allows for a twenty percent expansion of the nonconforming use on that parcel. We will further order that the area of allowable expansion shall consist of twenty percent of the total land area of both all of Parcel One and the land area not enjoined from use on Parcel Two.

### V. Parcels Three And Four

Prodex also argues that the trial court ignored evidence that Parcels Three and Four had been used for storage since before the ordinance was enacted in 1972. We note preliminarily that Prodex admits that these parcels were not used for fabrication. Thus, that part of the trial court order denying use of these parcels for manufacturing activities will be affirmed.

As for the denial of the use for storage on these parcels, we note our disagreement with Prodex that the pleadings in this case failed to bring Parcels Three and Four into issue. The pleadings are not limited to Parcels One and Two and seek equitable relief from activities which might arise anywhere on property used by Prodex. Further, we expressly affirm the trial court's conclusion, upon which it based its order now at issue, that Prodex has "no right to use Parcels Nos. 3 or 4 for any activity in connection with their business which is not in conformity with the zoning ordinance." *Richland Township v. Prodex, Inc.* (No. 90–1390–15–5, filed July

17, 1992), slip op. at 12. Having reviewed the record, we agree with Richland's statement that, at best, there is conflicting evidence as to whether Prodex had any pre–1972 usage of Parcels Three and Four. Therefore, the trial court properly exercised its role as fact finder and did not abuse its discretion. *Northview Motors, Inc. v. Commonwealth of Pennsylvania, Attorney General,* 128 Pa.Commonwealth Ct. 54, 562 A.2d 977 (1989), *petition for allowance of appeal denied,* 525 Pa. 605, 575 A.2d 570 (1990).

Prodex has failed to show error in the trial court's order granting Richland relief as to Parcels Three and Four.

### VI. Light, Dust And Noise Violations

 Prodex next disputes the part of the trial court order relating to the negative effects its activities have on its neighbors. Prodex claims that it cannot be precluded by the ordinance from performing its activities causing the offending light, dust and noise because these activities predate the ordinance and thus are part of the legal nonconforming use. We agree.

 Prodex is quick to point out that neighbors have been lodging complaints against it since 1969, three years prior to the adoption of local zoning regulation. Richland asserts in its complaint that the activities and their effects which allegedly violate provisions of the ordinance have occurred during the six months preceding its complaint; it does not allege that these activities and effects failed to occur prior to the adoption of the ordinance. In fact, Richland admits that Prodex's metal fabrication activities constitute a legal nonconforming use. The essence of a nonconforming use is that it is an activity or structure predating the relevant zoning ordinance. *Estate of Barbagallo v. Zoning Hearing Board of Ingram Borough,* 133 Pa.Commonwealth Ct. 38, 574 A.2d 1171 (1990). Property owners have a constitutional right to continue a nonconforming use. *Tantlinger v. Zoning Hearing Board of South Union Township,* 103 Pa.Commonwealth Ct. 73, 519 A.2d 1071 (1987).

■ Thus, by the very nature of a nonconforming use, a governing body and local citizens cannot bar through legislation the continuance of the nonconforming use, with all its undesirable interferences. In this case, the nonconforming use prevents Richland from enforcing the ordinance provisions pertaining to the activities at issue. "A lawful nonconforming use establishes in the property owner a vested property right which cannot be abrogated or destroyed, unless it is a nuisance, it is abandoned, or it is extinguished by eminent domain." *Pa Northwestern Distributors, Inc. v. Zoning Hearing Board of the Township of Moon,* 526 Pa. 186, 192, 584 A.2d 1372, 1375 (1991).

■ There is certainly no allegation in this case of abandonment or extinguishment by eminent domain. As for nuisance, the trial court relied upon a public nuisance theory as an alternative to its zoning ordinance rationale. Prodex argues that the court improperly relied on this theory because the evidence did not support a finding of public nuisance and because Richland never even raised the nuisance theory.

It is apparent from the pleadings that Richland did not raise the nuisance theory, but instead only alleged violations of the ordinance. Prodex cites *Namy v. Black,* 367 Pa. 523, 526, 80 A.2d 744, 746 (1951) (citation omitted), where the Pennsylvania Supreme Court held that "neither implied allegations nor proof of matters not alleged can be made the basis for equitable relief." Richland certainly obtained an unfair advantage by the fact that its pleadings were strictly based on violations of the ordinance and the trial court ruled in its favor based upon a common law tort theory of nuisance. The trial court went beyond the scope of both the relief sought by Richland and the procedural posture of this case. Thus, we agree with Prodex that the trial court erred in considering the nuisance theory.

Accordingly, we must reverse the order of the trial court insofar as it prohibits activities performed on land areas subject to the nonconforming use.

## VII. Conclusion

In conclusion, the trial court order is affirmed in part, modified in part and reversed in part. The order is affirmed insofar as it makes absolute the order enjoining Prodex from engaging in manufacturing activity on Parcels Three and Four. The order is also affirmed insofar as it enjoins Prodex from storing materials upon areas enjoined from manufacturing use, including Parcels Three and Four and the area on Parcel Two enjoined from business use, and insofar as it directs Prodex to remove stored materials and debris from areas enjoined from business use. The order is affirmed insofar as it makes absolute the decree instituting the injunction against business activity on the portion of Parcel Two beyond the one hundred and twenty-five foot depth line beginning from Cherry Road and extending along Nice Road, with the modification that the portion enjoined from use shall not include the area on Parcel Two beyond the one hundred and twenty-five foot depth line which represents an allowable expansion under the ordinance of twenty percent of the total areas of Parcel One plus the area on Parcel Two up to the one hundred and twenty-five foot depth line. The order is reversed insofar as it enjoins Prodex from engaging in business activities, within areas not enjoined from use, that cause glare, metal dust and loud noises beyond its boundaries.

## ORDER

AND NOW, this 24th day of November, 1993, the order of the Court of Common Pleas of Bucks County, at No. 90–1390–15–5, dated February 22, 1993, is hereby affirmed in part, modified in part and reversed in part. The order is affirmed insofar as it makes absolute the order enjoining Prodex from engaging in manufacturing activity on Parcels Three and Four; the order is affirmed insofar as it enjoins Prodex from storing materials upon areas enjoined from manufacturing use, including Parcels Three and Four and the area on Parcel Two enjoined from business use, and insofar as it directs Prodex to remove stored materials and debris from areas enjoined from business use; the order is affirmed insofar as it

makes absolute the decree instituting the injunction against business activity on the portion of Parcel Two beyond the one hundred and twenty-five foot depth line beginning from Cherry Road and extending along Nice Road, with the modification that the portion enjoined from use shall not include the area on Parcel Two beyond the one hundred and twenty-five foot depth line which represents an allowable expansion under the ordinance of twenty percent of the total areas of Parcel One plus the area on Parcel Two up to the one hundred and twenty-five foot depth line; and the order is reversed insofar as it enjoins Prodex from engaging in business activities, within areas not enjoined from use, that cause glare, metal dust and loud noises beyond its boundaries.