·NVC COMPUTER SALES, INC.

v.

**CITY OF PHILADELPHIA, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 4, 1997.

Decided June 2, 1997.

Reargument Denied July 23, 1997.

Alan C. Ostrow, Deputy City Solicitor, Philadelphia, for appellant.

F. Emmett Fitzpatrick, III, Philadelphia, for appellee.

Before SMITH and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

SMITH, Judge.

The City of Philadelphia (City) appeals from an order of the Court of Common Pleas of Philadelphia County that denied the City's motion for post-trial relief and entered judgment in favor of NVC Computer Sales, Inc. (NVC) in its action in equity. NVC challenged the validity of the City's termination of a bid award to NVC for the lease/purchase of a mainframe computer. The City questions (1) whether it had a duty to supply NVC with an installation date, which was not specified in the bid, to facilitate NVC's obtaining a performance bond, where NVC failed to show that neither it nor others could obtain a bond without this information and where providing it would have allowed windfall profits to NVC; (2) whether NVC's costs of complying with the bid should have been subtracted from the award of damages; and (3) whether NVC was improperly permitted to establish its case through hearsay.

I

The undisputed findings of the trial court[1] show that on January 8, 1992 the City notified NVC that it was the successful bidder to provide a used IBM 3090–400E mainframe computer for $1,133,900. Under the terms of the invitation to bid and the award notice, NVC was required to provide a performance bond within ten days of the award. The City approved NVC's January 31, 1992 request for an extension. On February 27, 1992, the City notified David Cicchitti, Vice President of NVC, that use of this computer system had been placed on hold and that NVC would have additional time to fulfill the bond requirement. A decision was made by the City

---

1. The trial was conducted before the Honorable James D. McCrudden, who rendered a verdict in favor of NVC but who passed away before ruling upon the City's post-trial motion. The Honorable Sandra Mazer Moss heard oral argument on that motion, and the Honorable Alfred J. DiBona, Jr. issued the order and opinion that are the subject of the present appeal.

in late May or early June to proceed with the purchase.

Later, the City told NVC that the price of the computer was too high. After a meeting in June 1992 NVC agreed to reduce the price of the system to $974,000, and the City issued a new award notice. In a letter dated July 2, 1992, David Cicchitti requested of Gary Henderson, Deputy Procurement Commissioner, that the new ten-day period for providing a bond commence after the Fourth of July holiday. Defendant's Exhibit D–11. Mr. Henderson thereafter granted NVC an open-ended extension of time to obtain the performance bond. Deputy Mayor Thomas Knox testified that he continued to explore outsourcing of the City's computing operations and that he did not wish to make a purchase for $975,000 until the final decision was made.

In August 1992, representatives of NVC indicated that it was having difficulty securing a performance bond because it lacked a firm installation date from the City. At a meeting in November the City requested that NVC lower the price of the computer again, asserting that the price exceeded the current fair market value.[2] NVC declined to lower the price further. The City did not perform the necessary site preparation work or provide NVC with an installation date, and the City did not secure signatures of officials named in the City Charter as being required to sign to create a contract. On January 21, 1993, the City notified NVC's counsel that it had cancelled the bid award to NVC, citing its failure to secure the required performance bond.[3] In April 1994, after a "re-bid," the City awarded a contract to ComSource, Inc. to provide the more sophisticated IBM 3090–400J; the new invitation and bid advertised by the City included an installation date.

Findings of the trial court that the City vigorously contests are that NVC could secure a performance bond only upon obtaining an installation date from the City, because installation was the very act that the bonding company was required to guarantee, and that the City agreed to an extension until such time as it supplied NVC with an installation date.[4] The trial court concluded that all conditions precedent to the execution of final signatures of officials of several City departments as required by the City Home Rule Charter had been met when the bid award was cancelled. It concluded further that those signatures should have been provided in a routine manner; that NVC acquired contract rights under the bid award letter; that the City's arbitrary and bad-faith actions prevented NVC from securing the performance bond; and that the cancellation of the award lacked a legal basis and was void. The scope of the Court's review is limited to determining whether the findings are supported by substantial evidence or whether there was an error of law or an abuse of discretion. *Richland Township v. Prodex, Inc.*, 160 Pa.Cmwlth. 184, 634 A.2d 756 (1993).

2. NVC entered into evidence without objection a letter dated October 8, 1992 from the Regional Sales Manager of ComSource, Inc. to the Director of Operations of the Philadelphia Computing Center stating that the current price for an IBM 3090–200J Complex was $1,200,000 to $1,300,000, and the price of 3090–400E was $475,000 to $525,000, with an additional $50,000 to $55,000 for the feature known as PR/SM. Plaintiff's Ex. 38, p. 2; N.T., January 30, 1995, p. 133.

3. The City never declared NVC to be in default of its obligations; had it done so, NVC would have had a standard period of ten days in which to attempt to cure the default. NVC presented no evidence at trial that it could have obtained a bond with such notice but without an installation date.

4. NVC entered into a joint venture with General American Financial Corporation (General American), for the purpose of having General American secure the bond, because NVC could not obtain a bond of the size required on its own; NVC agreed to share the profits 50 percent. David Cicchitti signed a bond application to Amwest Surety Insurance Company (Amwest), Defendant's Ex. D–11b; however, General American was responsible for obtaining the bond. Amwest thereafter requested a modification of the performance bond language to limit its obligation on the bond to March 31, 1993, Defendant's Ex. D–12, which the City refused. NVC asserted that it was not a party to any of the dealings between General American and Amwest and stated that it did not know what type of information, collateral or letter of credit Amwest may have requested of General American.

## II

The City begins by arguing that NVC did not acquire contract rights under the bid and award documents. It quotes from the Philadelphia Home Rule Charter (Charter), Section 8–200, relating to contracts, which provides in subsection (2)(c) that a successful bidder, within ten days after the award of a contract, shall provide "a performance bond ... containing such terms as the [Procurement] Department and the City Solicitor shall require and in such amount as the Department may determine." Subsection (2)(d) provides that a contract shall be in writing and "shall be executed in behalf of the City by the Procurement Department but only after it has been approved as to form by the City Solicitor and as to availability of funds under the budget and appropriations by the City Controller and the Director of Finance."

The City notes that the provisions of the Charter have the force and effect of statutes, *Addison Case,* 385 Pa. 48, 122 A.2d 272 (1956), *appeal dismissed,* 352 U.S. 956, 77 S.Ct. 353, 1 L.Ed.2d 316 (1957). Where the formal mode of making public contracts is prescribed by statute, it must be observed; otherwise such contracts cannot be enforced against the public agency. *Chilli v. McKeesport School Dist.,* 334 Pa. 581, 6 A.2d 99 (1939) (citing *Luzerne Township v. Fayette County,* 330 Pa. 247, 199 A. 327 (1938)). Where a municipal body advertises for bids for public work and receives an apparently satisfactory bid, it is within the contemplation of both the bidder and acceptor that no contractual relation arises until a written contract has been entered into embodying all material terms of the offer and acceptance. *Crouse, Inc. v. Braddock Borough School Dist.,* 341 Pa. 497, 19 A.2d 843 (1941).

NVC readily concedes that no formal contract between it and the City was ever executed. In this Court's view, the failure of NVC ever to comply with the mandatory requirement of the Charter and the award notice to provide a performance bond meant that a situation never arose where the appropriate City officials should have been presented with a written contract and should have provided their signatures. To the ex-

tent that the trial court concluded otherwise, it was in error. The essence of this case, however, is NVC's equitable claim that the City's abusive conduct in never providing a firm installation date for the computer prevented NVC from securing a performance bond, which it could then submit.

In evaluating NVC's claim, the Court turns first to the City's hearsay contentions. Hearsay is an out-of-court statement, which may be oral, written or even non-verbal, that is offered in court to prove the truth of the matter asserted. *Harris v. Sheriff of Delaware County,* 675 A.2d 400 (Pa.Cmwlth.1996). At trial the City objected on hearsay grounds to any testimony by Nicholas Cicchitti, President of NVC, concerning information he received from the bonding company. The trial court overruled the objection stating, "He is very familiar with this. I am going to allow it." N.T., January 30, 1995, p. 88. The testimony at that point concerned an asserted need by the bonding company to know whether its obligation applied to the relatively brief period covering delivery, installation and testing of the computer or to the full 36 months of the lease/purchase agreement.

The City stresses that NVC did not present the testimony of any representative of either General American, the joint venturer with NVC, or Amwest, the intended supplier of the performance bond. Therefore, anything to which Nicholas Cicchitti testified concerning Amwest's needs must have come secondhand from Amwest or thirdhand from Amwest to General American to Nicholas Cicchitti. NVC responds that the fact that the City undeniably gave NVC an unlimited extension of time in which to provide a bond renders such hearsay questions immaterial. The Court concludes, however, that testimony of Nicholas Cicchitti as to requirements assertedly imposed by the bonding company before NVC could obtain a bond is hearsay and is not covered by any recognized exception to the general rule against the admission of hearsay evidence. Consequently, the trial court's finding that NVC could procure a performance bond only upon obtaining an installation date from the City is not supported by substantial evidence in the record.

### III

The City first responds to NVC's equitable arguments by noting the principle stated in *Conduit and Foundation Corp. v. City of Philadelphia*, 41 Pa.Cmwlth. 641, 401 A.2d 376 (1979), that competitive bidding requirements guard against favoritism, improvidence and fraud and are enacted for the benefit of property owners and taxpayers, not for the benefit and enrichment of bidders. In *Weber v. City of Philadelphia*, 437 Pa. 179, 262 A.2d 297 (1970), the Supreme Court stressed that courts, absent proof of fraud, collusion, bad faith or abuse of power, do not inquire into the wisdom of municipal actions, and judicial discretion should not be substituted for administrative discretion.

The City argues that it had no legal obligation to deviate from the bid specifications by providing an installation date or to amend the standard bond form to add a specific date when a surety's obligation would cease for the convenience of NVC in obtaining a bond. The trial court correctly found that the absence of an installation date was the standard bid procedure. NVC provided no evidence at all that it was commercially unreasonable for a bidder to secure a bond without provision of an installation date. Although the City granted NVC extensions for securing a bond, there is no evidence that the City agreed to provide an installation date before requiring a bond. The finding that the January 1992 grant of an extension was on this basis lacks any support in the record.

■ NVC notes that both the trial judge and the judge who ruled on the City's post-trial motion concluded that the City's defense based on the City Charter and the lack of a performance bond was a subterfuge. Government officials may not exercise their discretionary authority, such as to withdraw a bid award, for reasons that are arbitrary, in bad faith or the result of collusion and fraud. *American Totalisator Co. v. Seligman*, 489 Pa. 568, 414 A.2d 1037 (1980). NVC cites numerous references to the record for the assertion that the City gave NVC an unlimited extension to obtain a performance bond until the City gave NVC an installation date. However, none of the cited references supports this assertion, and several flatly contradict it.

■ In the Court's view, the trial court's order must be reversed. As noted above, no contract ever existed between NVC and the City. The award notices were conditional. At any time during the protracted period between the first award notice and the notice of cancellation, NVC could have altered that situation simply by providing the performance bond that it committed to provide within ten days of the award when it made its original bid. Despite NVC's representation that it was able to comply with the bond requirement, Nicholas Cicchitti testified that NVC gave no thought to this matter before the award, even though NVC could not possibly have secured a bond in the amount required on its own.

As for NVC's reasons for not providing a bond, it failed first to provide admissible evidence that the one bonding company named as a possible surety, Amwest, required an installation date before it would issue a bond. The evidence did establish that Amwest sought a modification of the standard bond language that was presented to it, to limit its obligation to a specific date, and the City declined to make such a modification. The invitation to bid and the award notice provided for no such limitation; as the City's witness Gary Henderson noted, even with an installation date, a bond limited as Amwest requested would not meet the requirements of the award notice. David Cicchitti, described as having most of the contacts with the City on this matter, did not testify.

Finally, the Court expressly notes that it does not endorse the conduct of the City in this matter, which appears to amount to sharp dealing. Nevertheless, the issue here is whether NVC acquired rights that the City violated. By its own conduct, NVC placed itself in a position where it acquired no such rights. Because of the reasoning adopted by the Court in disposing of this appeal, the Court finds no need to address the City's additional questions concerning windfall profits inuring to NVC if the trial court's decision were let to stand and whether the costs of complying with the bid should have been

subtracted from the award of damages. Accordingly, the order of the trial court is reversed.

### *ORDER*

AND NOW, this 2d day of June, 1997, the order of the Court of Common Pleas of Philadelphia County is reversed.