611 A.2d 778

**In re ESTATE OF Theodore J. GETZ, Deceased.**

**Appeal of Elizabeth RYGALSKI, Appellant.**

Commonwealth Court of Pennsylvania.

Argued April 9, 1992.

Decided June 5, 1992.

394

Fred J. Wiest, for appellant.

John J. Butchar, Deputy Atty. Gen., for appellee.

Before DOYLE and KELLEY, JJ., and LEDERER, Senior Judge.

KELLEY, Judge.

The sole issue in this declaratory judgment action is whether a testator was domiciled in Pennsylvania at the time of his death.

Theodore J. Getz, a native of Pennsylvania, died testate on March 28, 1990, at his residence in De Bary, Volusia County, Florida. On April 5, 1990, the Register of Wills of Schuylkill County issued letters testamentary to the Peoples First National Bank and Trust Company of Hazleton, Pennsylvania (executor). On July 9, 1990, executor filed a petition for declaratory judgment in the Court of Common Pleas of Schuylkill County (trial court), alleging that, since the grant of

letters testamentary, facts had become known which indicated that testator, prior to his death, had established his domicile in Florida. Executor therefore requested that the trial court render a declaratory judgment pursuant to 42 Pa.C.S. § 7535 [1] determining testator's domicile at the time of his death. The trial court scheduled a hearing on the issue of testator's domicile and ordered that notice be given to Elizabeth S. Rygalski, testator's sister and residuary legatee, and to the Pennsylvania Department of Revenue, both of whom appeared and participated in the hearing.

No testimony was taken at the hearing. The parties stipulated to the authenticity of various documents which were entered into evidence along with answers to requests for admissions. On this record, the trial court entered a decree nisi on March 5, 1991, in which it concluded that testator was a domiciliary of Pennsylvania. On May 24, 1991, the trial court denied Rygalski's exceptions to the decree nisi and entered a final decree from which this appeal was taken.

## JURISDICTION

Rygalski originally appealed this case to the Superior Court which, on the petition of the Department of Revenue, transferred the case to this court pursuant to Pa.R.A.P. 751. [2] We may, of course, address the issue of our subject matter jurisdiction *sua sponte*. *Department of Transportation v. Rollins Outdoor Advertising Co., Inc.*, 76 Pa.Commonwealth Ct. 554, 464 A.2d 653 (1983).

Appeals from final orders of the courts of common pleas are governed by sections 722, 742 and 762 of the Judicial Code, 42

---

1. Section 7535 of the Judicial Code, 42 Pa.C.S. § 7535 provides that any person, including an executor, interested in the estate of a decedent may have a declaration of rights or legal relations to determine any question arising in the administration of the estate.

2. The transfer petition admitted that the issue in the case was testator's domicile at the time of his death. The petition, however, further alleged that the Commonwealth's interest in the case "is the inheritance tax due from the estate if the lower Court's Opinion is affirmed," and that this court's jurisdiction was based on 42 Pa.C.S. § 762 (appeals from final orders of common pleas courts in Commonwealth civil cases).

Pa.C.S. §§ 722, 742, 762. Sections 722 and 762 provide that the Supreme Court and Commonwealth Court, respectively, shall have exclusive jurisdiction from final orders of the courts of common pleas in specified classes of cases. Section 742 vests Superior Court with residual jurisdiction over all other appeals from the common pleas courts.

We find no support in section 762 for our appellate jurisdiction in this matter. Contrary to the assertions of the Department of Revenue, this is not a "Commonwealth civil case", original jurisdiction of which is vested in another tribunal by virtue of any of the exceptions to section 761(a)(1). 42 Pa.C.S. § 762(a)(1). Nor is it a secondary appeal from a Commonwealth agency taken initially to the courts of common pleas under section 933. 42 Pa.C.S. § 762(a)(4). While it is doubtless true that the Commonwealth has an interest in the outcome of this case, the payment of inheritance tax is not now at issue, merely the determination of testator's domicile.

Although we have determined that this appeal is not properly encompassed within our appellate jurisdiction, in the interest of judicial economy and in light of the fact that neither party objected to Superior Court's transfer of the appeal, we will retain jurisdiction and address the merits. *Austin v. Borough of Ligonier*, 122 Pa.Commonwealth Ct. 161, 551 A.2d 403 (1988).

## DOMICILE

The issue of domicile is a mixed question of fact and law and is reviewable by our appellate courts. *Smith v. Smith*, 364 Pa. 1, 70 A.2d 630 (1950). Because the ultimate fact of domicile is merely a deduction from other facts reported by the trial court, we are competent to judge its correctness and draw our own conclusions from the facts as reported. *Dorrance's Estate*, 309 Pa. 151, 156, 163 A. 303, 304 (1932).

The domicile of a person is the place where he has voluntarily fixed his habitation with a present intention to make it either his permanent home or his home for the indefinite future. *Estate of McKinley*, 461 Pa. 731, 337 A.2d

851 (1975). To effect a change of domicile there must be a concurrence of two factors: physical presence where the new domicile is alleged to have been acquired, and the intention to make it one's home without any fixed or certain purpose to return to the former place of abode. *Id.*

It is an established principle that domicile, having been shown to exist, is presumed to continue until another domicile is affirmatively proven. *Id.* Where a change of domicile is alleged, the burden of proving it rests upon the person making the allegation. *Loudenslager Will,* 430 Pa. 33, 240 A.2d 477 (1968) (citing *Mitchell v. United States,* 21 Wall. 350, 22 L.Ed. 584 (1875)). Residence in a new locality with intent to make that residence a permanent home, coupled with the manifested intent of abandoning the former domicile, must be shown by clear and convincing evidence. *Obici Estate,* 373 Pa. 567, 97 A.2d 49 (1953).

It is undisputed that testator was domiciled in Pennsylvania for the majority of his life. In 1967, testator retired from his job in Philadelphia and moved with his wife, Grace, to the family farm of his wife's mother in Zion Grove, Schuylkill County. Testator and his wife began to winter in Florida and, in 1969, purchased a building lot in De Bary. In 1984 testator and his wife constructed a house on the lot. It is at this point that Rygalski asserts a change of domicile to Florida.

The evidence submitted to the trial court was conflicting. Testator applied for and was granted a Florida Homestead Tax Exemption for the years 1984 through 1990, which is available only for "residents" of Florida. Beginning in 1984, testator registered his vehicle in Florida, acquired a Florida operator's license and registered to vote in Florida. Testator's Pennsylvania registration, operator's license and voter registration were not maintained after 1984.

From 1984 until the death of testator's wife in February, 1988, the couple lived at their residence in Florida from approximately October until May of every year, then returned to the farm in Zion Grove for the summer months, where they rented the farmhouse for $100 per month. Following his

wife's death, testator continued this pattern until his own death in March of 1990. Testator maintained bank accounts in various institutions in both states, but maintained his sole safe deposit box in Pennsylvania. Testator's federal income returns for the years 1985, 1986 and 1988 listed his address as Zion Grove, Pennsylvania, while the 1989 return listed his Florida address. Testator's Social Security checks were directly deposited into a Pennsylvania bank account. Testator was buried at Elan Memorial Park in Lime Ridge, Columbia County, Pennsylvania. Finally, both testator's will, which was executed on September 27, 1988, and codicil, executed on September 6, 1989, stated that testator was "of Zion Grove, Schuylkill County, Pennsylvania."

 From this evidence, the trial court recognized that the first element of a change of domicile, physical presence in the new locale, had been clearly established. The question of intent, however, was more problematic as the trial court also recognized. Intent to change domicile may be established by conduct. *Pusey's Estate*, 321 Pa. 248, 184 A. 844 (1936). While testator's change of his vehicle registration, operator's license and voter registration constitute conduct indicative of an intent to change domicile, other acts such as his continued listing of a Pennsylvania address for federal income tax purposes, execution of a recent will and codicil attesting to Pennsylvania domicile and actual interment in Pennsylvania speak otherwise.

Of the many pieces of conflicting evidence, we find the will itself most persuasive. The late Chief Justice Brown, deciding a case with similar facts, stated:

For fifty years the testator maintained a home in the City of Philadelphia. From 1883 he had another home, during a portion of each year, in Montgomery County, and since that year he lived in his Philadelphia home only during the winter months, leaving it annually in the early spring to spend the summer and early fall in his country home in Montgomery County. Though he had these two homes, he had but one legal domicile, and it was for him to determine where it should be, with the right to change it at any any

time from one county to the other: ... Up to the time he executed his will the testator had undoubtedly regarded Montgomery County as his domicile, for he spent the major portion of the year there, had registered and voted there, and made annual returns to an assessor of that county of his personal property for the purpose of taxation. His last return was made in December, 1916, for the year 1917; but while he had thus himself clearly established and proclaimed his domicile, when he was about to set his house in order for his final departure from it, it was for him to declare which of his two homes he regarded, and was to be regarded, as his family or principal residence. That he did so declare was most clearly established.

*Winsor's Estate,* 264 Pa. 552, 107 A. 888 (1919) (citations omitted).

■ The testator in *Winsor* had stated in his will that he was "of the city of Philadelphia and state of Pennsylvania." Testator in this case has stated that he was "of Zion Grove, Schuylkill County, Pennsylvania." We believe that such clear language in the testamentary instrument itself is sufficient to confirm the presumption of continued domicile in Pennsylvania.

Accordingly, because Rygalski has not proven by clear and convincing evidence that testator manifested an intent to abandon his lifelong domicile in Pennsylvania, we affirm the final decree of the trial court.

### ORDER

NOW, this 5th day of June, 1992, the final decree of the Court of Common Pleas of Schuylkill County, dated May 24, 1991, at No. 90–337E, is affirmed.

DOYLE, J., dissents.