625 A.2d 183

**NORWIN SCHOOL DISTRICT, Appellant,**

v.

**Joseph CORTAZZO, a Minor, by and through his Parents and Guardians, Mary CORTAZZO and Gregory Cortazzo, and Mary Cortazzo and Gregory Cortazzo, in their own right.**

Commonwealth Court of Pennsylvania.

Argued March 4, 1993.

Decided May 4, 1993.

Richard L. McMillan, for appellant.

Charles R. Conway, III, for appellees.

Before McGINLEY and PELLEGRINI, JJ., and NARICK, Senior Judge.

McGINLEY, Judge.

The Norwin School District (School District) appeals from an order of the Court of Common Pleas of Westmoreland County (trial court) that denied the School District's post-trial motions and entered judgment on a jury verdict in the amount of $30,000.00 in compensatory damages and $4,698.10 in delay damages in favor of Joseph Cortazzo, a minor, and his parents, Gregory and May Cortazzo (collectively, the Cortazzos). We affirm.

On June 2, 1988, Joseph Cortazzo was seriously injured (fractured femur) when his leg was caught under a bar of a merry-go-round he was riding, which was located on the playground of the School District's Hillcrest Elementary School. The merry-go-round was being pushed by Joseph and other children at the time he was injured.

On August 21, 1989, the Cortazzos filed a complaint against the School District alleging negligence in the possession and control of the merry-go-round. The Cortazzos specifically alleged that the School District was negligent in failing to properly erect, maintain and inspect the merry-go-round affixed to its real property, and that the merry-go-round in question was defective because it was not equipped with a floor platform to prevent children like Joseph from putting their legs through the bars and touching the ground.[1]

1. We note that the Cortazzos seek recovery based on the theory that the School District was negligent in its care, custody and control of the

The School District filed an answer denying any negligence and asserting the affirmative defense of governmental immunity under 42 Pa.C.S. § 8542(b). After discovery, the School District filed a motion for summary judgment based on governmental immunity, which was denied by the trial court.

The case then proceeded to trial, and the jury concluded that the merry-go-round was real property, that it was defective, and that the School District was negligent in the care, custody, and control of the property. The jury attributed one-hundred per cent of the causal negligence to the School District. The jury also found that Joseph suffered permanent disfigurement as a result of surgery to correct his injuries. As a result, the jury awarded the Cortazzos $30,000.00 in compensatory damages.

After the verdict the Cortazzos filed a motion for delay damages, and the School District filed post-trial motions, including a motion for judgment notwithstanding the verdict again based on governmental immunity. The trial court denied the School District's post-trial motions and awarded the Cortazzos $4,698.10 in delay damages. The School District appeals.

The School District's first contention is that the trial court erred in not ruling as a matter of law that the Cortazzos' claim did not fall within the real property exception in 42 Pa.C.S. § 8542(b), which provides:

Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

. . . .

(3) Real property.—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local

merry-go-round (affixed to its real estate) and our review does not involve any claim based upon a theory of product liability under Section 402A of the *Restatement (Second) of Torts.*

agency. As used in this paragraph, "real property" [2] shall not include:

(i) trees, traffic signs, lights and other traffic controls, street lights and street lighting;

(ii) facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-ways;

(iii) streets; or

(iv) sidewalks.

The School District argues that it is not liable where the real estate *itself* did not cause the injury. The School District cites *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987), which holds that an artificial condition or defect of the land itself must cause the injury and not merely facilitate the injury by the acts of others whose acts are outside the real estate exception. 514 Pa. at 363, 523 A.2d at 1124. The School District alleges that in the present case Joseph's injuries resulted from his own actions and the actions of other students in pushing the merry-go-round.

In *Bendas v. Township of White Deer*, 531 Pa. 180, 611 A.2d 1184 (1992), our Supreme Court cited its prior decision in *Snyder v. Harmon* for the rule that the "duty of care a Commonwealth agency owes to those using its real estate is such as to require that the condition of the property is safe for the activities for which it is regularly used, intended to be used, or reasonably foreseen to be used." *Bendas*, 531 Pa. at 183, 611 A.2d at 1186. Also, as the School District notes, our Supreme Court has held that an artificial condition or defect in the land *itself* must cause the injury and not merely facilitate the injury by the acts of others. *Crowell v. City of Philadelphia*, 531 Pa. 400, 404–06, 613 A.2d 1178, 1180 (1992) (citing *Mascaro*, 514 Pa. at 363, 523 A.2d at 1124).

**2.** We note that this section does not contain the phrase "dangerous condition" found in the real estate exception to sovereign immunity set forth in 42 Pa.C.S. § 8522(b)(4). However, our Supreme Court has utilized the same criteria while construing both real estate exceptions. *Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307 (1989). *See also Crosby v. Kotch*, 135 Pa.Commonwealth Ct. 470, 473–74, 580 A.2d 1191, 1193 (1990).

However, in *Crowell,* the Supreme Court reviewed *Mascaro* and noted that in cases where a plaintiff is injured and brings an action against a government unit, the government unit is subject to liability despite the presence of an additional tortfeasor if the government unit's actions preclude indemnity from another for injuries rendered to a third person. *Crowell,* 531 Pa. at 412–13, 613 A.2d at 1184.

In *Crowell,* the Court analyzed the law of indemnification: It is clear that the right of a person vicariously or secondarily liable for a tort to recover from one primarily liable has been universally recognized. But the important part to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based upon some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible. In the case of *concurrent* or *joint* tortfeasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either against the other; in such a case there is only a common liability and not a primary or secondary one, even though one may have been very much more negligent than the other. The universal rule is that when two or more contribute by their wrongdoing to the injury of another, the injured party may recover from all of them in a joint action or he may pursue any one of them and recover from him, in which case the latter is not entitled to indemnity from those who with him caused the injury.

*Id.* at 412, 613 A.2d at 1184 (citing *Builders Supply v. McCabe,* 366 Pa. 322, 325–28, 77 A.2d 368, 370–71 (1951)) (emphasis in original).

In the present case, the jury concluded that the merry-go-round was real property (Reproduced Record (R.R.) at 212), that there was a defect in the merry-go-round (R.R. at 212–

13), that the defect caused Joseph's injuries (R.R. at 213), that the School District was negligent regarding the care, custody and control of the merry-go-round (R.R. at 213), and that the School District's negligence was the sole cause of Joseph's injuries (R.R. at 213). These findings are supported by substantial evidence in the record. Clearly, the Cortazzos established negligence on the part of the School District. Accordingly, the trial court did not err in finding the real estate exception applicable.

■ The School District's next contention is that the trial court erred in failing to rule as a matter of law that Joseph did not suffer a permanent disfigurement and is thus not entitled to an award of damages for pain and suffering, because there is no evidence in the record to support that finding. The School District cites the statutory limitations on damages recoverable against a government unit set forth in 42 Pa.C.S. § 8553(c), which provides:

(c) Types of losses recognized.—Damages shall be recoverable only for:

(1) Past and future loss of earnings and earning capacity.

(2) Pain and suffering in the following instances:

(i) death; or

(ii) only in cases of permanent loss of a bodily function, permanent disfigurement or permanent dismemberment where the medical and dental expenses referred to in paragraph (3) are in excess of $1,500.

(3) Medical and dental expenses including the reasonable value of reasonable and necessary medical and dental services, prosthetic devices and necessary ambulance, hospital, professional nursing, and physical therapy expenses accrued and anticipated in the diagnosis, care and recovery of the claimant.

(4) Loss of consortium.

(5) Loss of support.

(6) Property losses.

The School District contends that Joseph suffered neither a permanent loss of bodily function nor a permanent disfigurement and is thereby entitled only to medical expenses and not damages for pain and suffering. The School District argues that Joseph's treating physician, Dr. Michael A. Trainovich, did not testify that Joseph suffered any permanent disfigurement or permanent loss of a bodily function.

In his closing argument, the School District's counsel summarized the evidence presented and anticipated the trial court's charge regarding permanent disfigurement:

The second question that you are going to be asked on the issue of damages is whether or not Joseph suffered any permanent disfigurement. Now, let's look back at the evidence that we had in this case. Joseph was up here on the witness stand, and you'll recall that yesterday he rolled up his pant leg to show his knee. The basis of plaintiff's contention that there is a permanent disfigurement is because there was a pin that was inserted in the leg for purposes of traction. That pin has been removed, and there was an indication at least from Joseph that there may be a scar there. But he showed you his knee, he showed you his leg from the witness stand, and I would submit to you that that is not a disfigurement based upon the law of what a disfigurement is, and you will be instructed on that by Judge Scherer as to exactly what disfigurement means, and that means that which impairs the beauty, symmetry or appearance of a person or thing, or which renders unsightly, misshapen or imperfect or deformed in some manner. There also has to be testimony that this disfigurement is permanent. There's no testimony whatsoever that this— that even if it's disfigurement, it's permanent.

School District's Closing Argument; R.R. at 163–64.

Our examination of the record indicates that Dr. Trainovich testified that a traction pin was surgically inserted into Joseph's leg by drilling through the bone and inserting the pin. Dr. Trainovich's Deposition, February 26, 1992, at 10–11. This pin was subsequently also surgically removed, which resulted in a permanent hole in the bone. Dr. Trainovich's

Deposition at 16.  In addition, Joseph showed the jury the location of his injury by rolling up his pant leg.  R.R. at 52.

In *Walsh v. City of Philadelphia,* 526 Pa. 227, 585 A.2d 445 (1991), our Supreme Court interpreted the phrase "permanent disfigurement" in 42 Pa.C.S. § 8553(c) by turning to *Black's Law Dictionary* (5th ed. 1979) for the meanings of "permanent" and "disfigurement":

> Permanent.  Continuing or enduring in the same state, status, place, or the like, without fundamental change, not subject to fluctuation, or alteration, fixed or intended to be fixed; lasting; abiding; stable; not temporary or transient.  Disfigurement.  That which impairs or injures the beauty, symmetry, or appearance of a person or thing;  that which renders unsightly, misshapen, or imperfect, or deforms in some manner.

*Walsh,* 526 Pa. at 243, 585 A.2d at 453.

In *Walsh,* the Court held that a noticeable half-inch difference in the plaintiff's left quadracep and calf constituted permanent disfigurement.  In the present case, Joseph pulled up his pant leg and showed the jury the location of the injury.  It is a reasonable conclusion, as the School District conceded in closing argument, that there was a scar as a result of the injury and treatment.  Webster's Dictionary has defined "scar" in part as "1: to mark with a scar: MAR, DISFIGURE 2: to leave a lasting ill effect on. . . ."  *Webster's Third New International Dictionary* 2025 (1986).  In view of the foregoing, we hold that there was sufficient evidence for the jury to conclude that Joseph suffered a permanent disfigurement.

The order of the trial court is affirmed.

### *ORDER*

AND NOW, this 4th day of May, 1993, the order of the Court of Common Pleas of Westmoreland County in the above-captioned proceeding is affirmed.