### SPRINGFIELD TOWNSHIP

v.

### Dong H. KIM and Chae K. Kim, his wife, t/d/b/a Rocky Ridge Motel, Appellants.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 5, 2001.
Decided March 4, 2002.

---

Douglas P. France, York, for appellants.

John D. Miller, Jr., York, for appellee.

Before PELLEGRINI, Judge, FRIEDMAN, Judge and FLAHERTY, Senior Judge.

FLAHERTY, Senior Judge.

Dong H. Kim and Chae K. Kim (Owners) appeal from the order of the Court of Common Pleas of York County (trial court), which granted the injunctive relief sought by Springfield Township (Township) regarding Owner's continued use of a recreational vehicle park for permanent occupancy. We affirm.

In 1973, a previous owner of the property received approval from the Township to use the property for "overnight camping".[1] In 1976, a variance was granted to permit the location of a mobile home on the property for rental purposes with the specific

---

1. The parties have stipulated to the facts.

restriction that the mobile home not be used as a permanent residence. In 1980, the Township notified a prior owner that several mobile homes were being used as permanent residences, which was in violation of then-existing zoning ordinances. There is no record of further action as a result of the 1980 violation notification.

Owners purchased the property in 1991. In 1994, two mobile homes and nine recreational vehicles were connected to a sewage system. Cindy and William Edwards have lived on the property since 1988. Their per capita and school tax bills and Department of Transportation documents are sent to the property. All "campground" residents receive their mail at the recreational vehicle park (Park). James Rice has also lived on the property since 1988. Mr. Rice's vehicle has been present at the same Park site for approximately 13 years. A "Mrs. Lloyd" has lived in the Park in a recreational vehicle for 2–3 years. Various other persons have also lived on the property for periods ranging from several months to a year. Park occupants pay weekly rent; however, a "Mr. Gurke" rents on a monthly basis.

In September 1995, the Township Zoning Officer informed the Township Board of Supervisors that Owners' use of the property might be a zoning violation. In August 1997, the Township filed a Complaint in Equity against Owners seeking to enforce Section 422(b) of the Springfield Township Zoning Ordinance (Ordinance), which prohibits the "use of any recreational vehicle as a permanent residence within any recreational vehicle park. . . ." Owners asserted that the recreational vehicles were used as less-than-permanent residences so there was no violation. Owners also raised the affirmative defenses of variance by estoppel and laches. Following a non-jury trial, the trial court enjoined Owners from, *inter alia*, the following:

[R]enting, allowing, permitting or encouraging occupancy of the Recreational Vehicle Park to individuals, or any other entity, for longer than fourteen (14) consecutive days and cumulatively, forty-five (45) days in any calendar year.

[C]ontinued use of the Recreational Vehicle Park for permanent occupancy.

Tr. Ct. Order dated November 16, 2000, pp. 16–17.

▆ Owner raises the identical issues before this Court. We note that in reviewing a final decree in equity, this Court's scope of review is limited to determining whether the trial court's findings are supported by substantial evidence, whether there was an error of law committed or whether the trial court committed an abuse of discretion. *Northview Motors, Inc. v. Commonwealth of Pennsylvania, Attorney General,* 128 Pa.Cmwlth. 54, 562 A.2d 977, 978 (1989), *pet. for allowance of appeal denied,* 525 Pa. 605, 575 A.2d 570 (1990).

▆ Owners first contend that Township is barred by laches from enforcing the Ordinance because Owners were prejudiced by the Township's 14 to 17-year delay. "For a party to prevail on the defense of laches, it must prove both inordinate delay and prejudice from that delay." *Richland Township v. Prodex, Inc.,* 160 Pa.Cmwlth. 184, 634 A.2d 756, 761 (1993). Owners assert that they have satisfied the latter requirement because they would be "severely prejudiced . . . by expenditures of substantial sums of money to bring the property into compliance with [mobile home park] requirements." Brief of Appellant at 10.

▆ Laches may be imputed to a municipality that has stood by and permitted large expenditures to be made upon the faith of municipal consent informally or tacitly given. *Appeal of Heidorn,* 412 Pa.

570, 573 n. 2, 195 A.2d 349, 351 n. 2 (1963). We affirm the trial court's finding that Owners have not expended large sums of money to improve the property as a result of the Township's delay. To the contrary, if Owners used the property as a *de facto* mobile home park instead of a recreational vehicle park, then Owners effectively avoided the cost of improving the property to meet the more stringent zoning requirements for mobile home parks.[2] Further, Owners fail to advance the argument that they were prejudiced by the delay because the cost of compliance would have been cheaper if the violation was detected earlier.[3]

▉▉▉ Alternatively, Owners assert that they have obtained a variance by estoppel to continue to use the Park for permanent residences. "Variance by estoppel, applies when a property owner, or someone with an interest in property, has maintained a use of property contrary to the zoning laws for a long period of time. As the term suggests, the theory provides protection for uses that are contrary to the zoning law, but in which the municipality has acquiesced." *Colelli v. Zoning Board of Adjustment of the City of Pittsburgh*, 131 Pa.Cmwlth. 615, 571 A.2d 533, 534 (1990). A variance by estoppel is an unusual remedy and is granted only in the most extraordinary of circumstances. *Skarvelis v. Zoning Hearing Board of Dormont*, 679

A.2d 278, 281 (Pa.Cmwlth.1996). To establish a *prima facie* variance by estoppel, the property owner has the burden to prove:

(1) The municipality's failure to enforce the ordinance for a long period of time; (2) that the municipality knew, or should have known, of the illegal use and "actively acquiesced" in the illegal use; (3) reliance by the owner on the appearance of regularity that the municipality's inaction has created; (4) hardship created by cessation of the illegal use; and (5) that the variance will not be a threat to the health, safety or morals of the community.

*Id.* at 535. For Owners to prevail under the theory of variance by estoppel, they must establish the essential factors by clear, precise and unequivocal evidence. *Lebovitz v. Zoning Board of Adjustment of the City of Pittsburgh*, 87 Pa.Cmwlth. 200, 486 A.2d 1061, 1065 n. 2 (1985) (citing *Funds for Business Growth, Inc. v. Maraldo*, 443 Pa. 281, 278 A.2d 922 (1971)).

▉▉▉ Owners contend that there is a lack of substantial evidence to support the trial court's finding that substantial evidence did not exist to support Owners' claim that the Township actively acquiesced.[4] Owners rely upon an exhibit appended to the stipulated facts as evidence of the Township's active acquiescence to the unlawful use of the property. This handwritten exhibit, dated April 2,

---

**2.** A mobile home park is a permitted use under Section 410 of the Ordinance.

**3.** Owners have not introduced evidence to prove that they would have complied with the mobile home park requirements if the Township enforced the Ordinance earlier. Next, Owners have not introduced evidence to prove that compliance under the prior Ordinance and current Ordinance would have differed. Finally, there is no evidence in the record estimating the cost of compliance. Owners also did not establish that they *changed* their position as a result of the Town-

ship's delay. *See Class of Two Hundred Administrative Faculty Members v. Scanlon*, 502 Pa. 275, 279, 466 A.2d 103, 105 (1983); *Building Industry Association of Lancaster County v. Manheim Township*, 710 A.2d 141, 147 (Pa.Cmwlth.1998). Rather, Owners *maintained* their position.

**4.** It is a well settled principle that mere inaction in enforcing an ordinance, without more, cannot support the granting of a variance. *See e.g., Klanke v. Zoning Board of Adjustment*, 83 Pa.Cmwlth. 441, 477 A.2d 907, 909 (1984).

1983, states that a summary offense was issued to a prior owner for permitting tenants to occupy or rent "homes" on a permanent basis. The exhibit further states that the offense was later withdrawn when more information was supplied. There is, however, no reason for the withdrawal. This exhibit was appended to the stipulation of facts to prove the identification of a prior owner of the property.[5]

"In those cases where we have granted a variance by estoppel, the municipalities have done more than passively stand by; they have committed some affirmative act, such as granting a building permit, which would reasonably lead a property owner to conclude that the proposed use was sanctioned under the law." *Skarvelis*, 679 A.2d at 281. The exhibit, on which Owners solely rely, does not constitute substantial evidence to prove that the Township actively acquiesced. Specifically, there is a lack of evidence to prove that Township engaged in any conduct, which would have placed its imprimatur on the use of the property. *See id.* at 282. In fact, rather than misleading the prior owner about the legality of the use of the property, the exhibit suggests that the Township informed prior owner that the Ordinance prohibited permanent residents on the property. *See id.*

■ Owners also contend that the trial court erred by concluding that Owners, as purchasers of the property, were duty bound to check the zoning status of the property. Owners argue that even if they checked the zoning status, they would have discovered that their use of the property as a recreational vehicle park was a permitted use. We disagree. "One who undertakes to make use of real estate for commercial purposes without inquiring as to whether the use is permitted by the municipality's zoning ordinance, does so at his own peril." *Mucy v. Fallowfield Township Zoning Hearing Board of Washington County*, 147 Pa.Cmwlth. 644, 609 A.2d 591, 594 (1992) (citation omitted). The purchaser's duty to inquire is not limited to whether a particular *use* is permitted but, by implication, must also encompass an inquiry into the limitations placed on the manner in which the property may be used, *e.g.*, a recreational vehicle park was a permitted use but not for permanent residences.

■ The next issue is not whether the recreation vehicles were used for residences but whether they were used as *permanent* residences. The Ordinance fails to define the term "permanent residence" so the trial court relied upon a dictionary. *See Hernley Family Trust v. Fayette County Zoning Hearing Board*, 722 A.2d 1115, 1117 (Pa.Cmwlth.1998) ("If a zoning ordinance does not define a term, the word must be given its usual and ordinary meaning; if a court needs to define a term in a zoning ordinance, it may consult the definitions found in statutes, regulations or dictionaries for guidance."); *see also* 1 Pa.C.S. § 1903. The trial court stated that "permanent" was not defined in the seventh edition of Black's Law Dictionary. The trial court, then concluded that "permanent residence" is similar to "permanent abode", which is the equivalent to "domicile". Domicile was defined as "the place at which a person is physically present and that the person regards as home; a person's true, fixed, principal and permanent home, to which that person intends to return and remain even though currently

---

**5.** Owners assume that the alleged acquiescence of the prior owner's use would also be imputed to their use of the property. This issue is subsumed in Owners' argument concerning the duty of a purchaser to check the zoning status of the property, *supra*.

residing elsewhere." Tr. Ct. Op. at 8 quoting Black's Law Dictionary 501 (7th ed.1999).[6]

 Domicile and residence are not interchangeable terms. *In re Du Puy's Estate,* 373 Pa. 423, 427, 96 A.2d 318, 319 (1953). In Pennsylvania, the distinction between domicile and residence is that residence is a physical fact, while domicile is a matter of intention. *Greenwood v. Hildebrand,* 357 Pa.Super. 253, 515 A.2d 963, 965 (1986). For example, a person may have many residencies but he may only have one domicile. *See In re Lesker,* 377 Pa. 411, 416, 105 A.2d 376, 379 (1954). The domicile of a person is the place where he has voluntarily fixed his habitation *with a present intention* to make it either his permanent home or his home for the indefinite future. *In re Estate of Getz,* 148 Pa.Cmwlth. 393, 611 A.2d 778, 782 (1992) (emphasis added) (citing *Estate of McKinley,* 461 Pa. 731, 337 A.2d 851 (1975)). We, therefore, cannot accept the trial court's usage of "domicile" to define "permanent residence"; the definition of "permanent residence" does not require evidence of intent.

Owners argue that "permanent" is synonymous with "existing perpetually" or "everlasting". Brief of Appellant at p. 8 (citing Random House Webster's College Dictionary (1991)). Section 1903 of the Rules of Statutory Construction requires that words and phrases be construed according to their common and approved usage when such words and phrases are undefined. 1 Pa.C.S. § 1903(a).[7] The fifth edition of Black's Law Dictionary defines "permanent" as:

> Continuing or enduring in the same state, status, place, or the like, without fundamental change, not subject to fluctuation, or alteration, fixed or intended to be fixed; lasting; abiding; stable; *not temporary or transient. Generally opposed in law to "temporary," but not always meaning "perpetual."*

Black's Law Dictionary 1025 (5th ed.1979) (emphasis added); *see also Walsh v. City of Philadelphia,* 526 Pa. 227, 243, 585 A.2d 445, 453 (1991) (using Black's Law Dictionary to define "permanent"); *Norwin School District v. Cortazzo,* 155 Pa. Cmwlth. 432, 625 A.2d 183, 187 (1993).[8]

According to this definition, "permanent", in the context of "permanent residence", is more properly construed as a residence that is long term and neither "temporary" nor "transient". Thus, the status of the residence can be deduced from what it is not, *i.e.,* short-term. Adoption of Owners' definition of "permanent" as "existing perpetually" or "everlasting" would require an element of intent. *Cf. Greenwood,* 515 A.2d at 965 (residence is a physical fact). For example, an expression of a person's intent would be necessary to

---

**6.** The Ordinance describes *recreational vehicles* as "providing partial and usually temporary living and sleeping quarters..." Section 2.48 of the Ordinance. The trial court defined "temporary" to mean "existing or continuing for a limited (usually short) time; transitory". Trial Court Opinion at p. 8 (citing Black's Law Dictionary (7th ed.)). This appeal, however, is not about the recreational vehicles, *per se,* but rather about *recreational vehicle parks.*

**7.** Section 1903 also states that, when words and phrases have acquired a peculiar and appropriate meaning, the words and phrases should be construed with such meaning. 1 Pa.C.S. § 1903(a).

**8.** *Walsh* and *Norwin School District* sought to define "permanent" in the context of "permanent disfigurement", therefore, we cannot conclude that "permanent" has gained such "a peculiar and appropriate meaning" to require this result. Rather, *Walsh* and *Norwin School District* support the conclusion that Black's Law Dictionary has provided a "common and approved" definition of "permanent".

conclude that a residence would be the person's primary residence forever. A similar expression of intent, however, is not necessary to conclude that a person's residence is more than temporary or transient, *i.e.*, permanent.

Under this construction, to determine if a residence is permanent, we must examine the facts regarding the use of each residence. Owner has conceded that a number of individuals have used their recreational vehicles as their residence. Brief of Appellant at 8. The parties stipulated that the mobile homes and recreational vehicles were connected to the sewage system. Further, all "campers" received their mail at the "campground". Moreover, at least one resident paid rent on a monthly basis. Paragraph 21 of the stipulated facts states that William F. and Cindy M. Edwards have "lived where they are [the campground] since 1988." R.R. at 3a. Others have lived in their recreational vehicles at the campground from several months to several years. The fact that some of the residents have since left the campground does not negate the fact that at least one group used their recreational vehicles as their residences for about a decade. These recreational vehicles were used as residences on a more than temporary or transient basis. Based on Owner's concession and the stipulated facts, we conclude that there is substantial evidence to support the trial court's find-

ing that the recreational vehicles were used as residences. Accordingly, the trial court did not err when it concluded that Owners violated the Ordinance when they allowed persons to live on the property on a permanent basis.

■ Finally, Owners contend that the trial court abused its discretion in imposing residency limitations of 14 consecutive days and 45 cumulative days in any calendar year. Implicit in the trial court's residency limitations is that a stay greater than that imposed is tantamount to the use of a recreational vehicle as a permanent residence, which is prohibited by the Ordinance. We observe that a trial court has discretion to fashion an appropriate remedy, including injunctive relief, and such remedy will not be overturned absent an abuse of discretion in that it was manifestly unreasonable or lacking in reason.[9]

In this case, "overnight camping" for the premises was first approved in 1973 when the then owner, W. Allen Myers, applied for such approval from the Township Planning Commission.[10] In requesting approval for "overnight camping" the application stated the "[p]urpose of the facility is to provide a rest stop for campers en route to a destination area. Campers would arrive in the early morning and then depart the following morning." R.R. at 22a. Thus, as originally contemplated "overnight camping" envisioned a single night stay. In light of the original intended use, we

---

**9.** In *Eaddy v. Hamaty*, 694 A.2d 639, 643 (Pa.Super.1997), the Superior Court observed that a trial court abuses its discretion if in reaching its conclusion it misapplies the law or it is overridden, or the judgment exercised is manifestly unreasonable or lacking in reason or the trial court does not follow legal procedure.

**10.** The 1968 Ordinance permitted camps and camping grounds as special exceptions in the Residential Rural district. A camp was defined as an area of land used for "temporary living purposes" or any land which may in-

clude buildings of movable, temporary or seasonal nature or land or buildings used for day camp purposes. A camping ground was defined as a parcel of land used by campers for "temporary living purposes." In 1977, 1990 and 1996 the Ordinance was revised to include a definition for "recreational vehicle." A recreational vehicle was defined as a portable or movable vehicle used for "temporary living." As noted by the trial court, camp grounds, later referred to as recreational vehicle parks, has always used the terminology of "temporary living spaces."

cannot say that the trial court abused its discretion or acted unreasonably in restricting individuals from occupying recreational vehicles for more than 14 consecutive days and for no more than 45 days in any year.

In accordance with the above, the order of the trial court is affirmed.

### *ORDER*

AND NOW, this 4th day of March, 2002, the order of the Court of Common Pleas of York County dated November 16, 2000 is affirmed.