J-A06037-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A.N.B | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| D.M. | : | |
| | : | |
| Appellant | : | No. 789 MDA 2018 |

Appeal from the Order Entered April 16, 2018
In the Court of Common Pleas of Mifflin County Civil Division at No(s):
CP-44-CV-373-2018

BEFORE:   OTT, J., NICHOLS, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:                    **FILED APRIL 11, 2019**

D.M. appeals from a final protection from abuse (PFA) order entered against him in the Court of Common Pleas of Mifflin County pursuant to 23 Pa.C.S. § 6102(a)(2) of the Protection from Abuse Act. (Act).[1] We affirm.

We take the following pertinent facts and procedural history from the trial court's opinion and our independent review of the certified record.  On November 18, 2017, A.N.B was at State College when her cousin, D.M. messaged her asking if she wanted to "hang out."  A.N.B agreed to see him later that night.  After a club closed in State College, A.N.B had a friend drive her to meet D.M. who was camping at a site in Centre County.

---

[1] **See** 23 Pa.C.S. §§ 6101–6122.

---

\* Retired Senior Judge assigned to the Superior Court.

Upon arrival, D.M. asked A.N.B. if she wanted a beer and she said no, but after he continued to insist, she relented. D.M. opened the beer out of A.N.B.'s sight and she believes D.M. put something in it because she started to feel fuzzy and blacked out and woke up with D.M. on top of her having sex with her. A.N.B. testified that D.M. told her to, "go back to sleep." (Tr. 14-15). A.N.B. told D.M., "no, this is not right, we're family." *Id.* A.N.B. testified that she was "in and out of the state of being" and then blacked out. Upon waking up the next morning, A.N.B.'s underwear was halfway down and her pants were on the ground. D.M. told her "This will be our dirty little secret." *Id.*

That night, A.N.B. told a family friend what happened and then went to an emergency room to have a rape kit done and talked with the police. (Tr. 16). At the direction of police, A.N.B. contacted D.M. to see if he would admit to A.N.B.'s allegations. After speaking with D.M. on the phone, A.N.B. received a text from D.M. stating, "How do I make this right? I can't remember half of what the hell happened. What do I need to do? I'm not going to live with this for the rest of my life over something stupid over both of our heads." A.N.B. chose not to file a petition under the Protection from Abuse Act at that time.

On March 22, 2018, around 1:30 a.m., A.N.B. received a phone call in Allegheny County where she was attending school from a random number. When she answered the phone, she recognized D.M.'s voice as the caller.

A.N.B. testified that D.M. told her, "I know where you live, I know where you go to school, don't be surprised if you see me sometime soon." A.N.B. stated that she felt threatened and believed that D.M. was going to "come out and harm me in some way." (Tr. 17-18). After the phone call, A.N.B. contacted the police.

On April 2, 2018, A.N.B. filed a Protection from Abuse Petition in the Court of Common Pleas of Mifflin County where she resides when she is not attending school in Allegheny County. That same day, the trial court entered a Temporary Protection for Abuse Order. On April 13, 2018, a final hearing on A.N.B.'s Protection from Abuse Petition was held where the evidence previously recounted was adduced.

At the conclusion of A.N.B.'s testimony, D.M.'s counsel made a motion to dismiss the petition due to the insufficiency and weight of the evidence and also contended that venue was improper in the Court of Common Pleas of Mifflin County because A.N.B. resided in Allegheny County where she goes to school, the phone call that D.M. purportedly made was to her in Allegheny County, and the purported improper sexual conduct occurred in Center County. The trial court denied both motions.

After the hearing concluded, the trial court granted the Protection from Abuse Petition finding that there was sufficient evidence to establish that D.M. abused A.N.B, his cousin, by intentionally, knowingly or recklessly having sexual intercourse with her and by threatening her on the phone after she

J-A06037-19

went to the police, and that it was reasonable that she was in fear of imminent serious bodily injury. The final PFA Order prohibited D.M. from threatening, harassing or contacting A.N.B. for a period of three years. This appeal followed.[2]

## I.

On appeal, D.M. initially contends that the trial court erred by finding that venue[3] was proper in the Court of Common Pleas of Mifflin County. Pa.R.C.P. No. 1901.1(a) provides that:

> Except [where possession of the residence or household is involved], an action for protection from abuse may be brought in a county in which
>
> (1) the plaintiff resides, either temporarily or permanently, or is employed, or
> (2) the defendant may be served, or
> (3) the abuse occurred.

---

[2] Our standard of review is well-established: "[i]n the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." **Boykai v. Young**, 83 A.3d 1043, 1045 (Pa. Super. 2014).

[3] Jurisdiction relates to the court's power to hear and decide the controversy presented. **Commonwealth v. Bethea** 828 A.2d 1066, 1074 (Pa. 2003) (citation omitted). Venue, on the other hand, refers to the convenience and locality of trial, or "the right of a party to have the controversy brought and heard in a particular judicial district." **Bethea** at 1074 (citation omitted). Venue assumes jurisdiction exists and it "can only be proper where jurisdiction already exists." **Id.** at 1074–75 (citation omitted). Even though all common pleas courts may have jurisdiction to resolve a case, such should only be exercised in the judicial district in which venue lies. **See id.** at 1075 ("Rules of venue recognize the propriety of imposing geographic limitations on the exercise of jurisdiction.")

- 4 -

Not considering whether it could be A.N.B.'s permanent residence, D.M contends that Mifflin County is not a proper venue for filing the PFA Petition because it is not her temporary residence, where she resides in Allegheny County. A.N.B, however, contends, that even though she has a temporary residence in Allegheny County, her permanent residence is in Mifflin County.

In **Springfield Twp. v. Kim**, 792 A.2d 717 (Pa. Cmwlth. 2002), the Commonwealth Court addressed what is a "permanent resident" in a zoning ordinance that did not define that term. In answering that question, the Court stated:

> In Pennsylvania, the distinction between domicile and residence is that residence is a physical fact, while domicile is a matter of intention. For example, a person may have many residencies but he may only have one domicile. The domicile of a person is the place where he has voluntarily fixed his habitation with a present intention to make it either his permanent home or his home for the indefinite future. We, therefore, cannot accept the trial court's usage of "domicile" to define "permanent residence"; the definition of "permanent residence" does not require evidence of intent.
>
> ***
>
> The fifth edition of Black's Law Dictionary defines "permanent" as: Continuing or enduring in the same state, status, place, or the like, without fundamental change, not subject to fluctuation, or alteration, fixed or intended to be fixed; lasting; abiding; stable; not temporary or transient. Generally opposed in law to "temporary," but not always meaning "perpetual."
>
> According to this definition, "permanent", in the context of "permanent residence", is more properly construed as a residence that is long term and neither "temporary" nor "transient". For example, an expression of a person's intent would be necessary to conclude that a residence would be the person's primary residence forever. A similar expression of intent, however, is not

- 5 -

necessary to conclude that a person's residence is more than temporary or transient, *i.e.*, permanent.

Under this construction, to determine if a residence is permanent, we must examine the facts regarding the use of each residence.

*Id.* at 723-724.

Although she currently has a temporary residence in Allegheny County while attending school there, A.N.B. has lived in Mifflin County with her parents for 19 or 20 years, stays with her parents for the duration of school vacations and holidays, and intends to move back to Mifflin County once she has completed school. Under these facts, A.N.B.'s residence in Allegheny County is temporary but her residence in Mifflin County is permanent. Accordingly, we find no error in the trial court's conclusion that venue was proper in Mifflin County.

## II.

D.M. also contends that the trial court erred in granting A.N.B.'s PFA Petition because the evidence offered by A.N.B. was insufficient to support a finding that an act of abuse was committed or that she has an objective and reasonable fear of bodily injury as defined under 23 Pa.C.S. § 6102.[4]

_____

[4] Under the Act, the petitioner has the burden of proving by a preponderance of the evidence the allegations of abuse. **See** 23 Pa.C.S. § 6107(a). "When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inference, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. ... This court defers

In pertinent part, "abuse" is defined under 23 Pa.C.S. § 6102 as:

The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.[5]

(2) Placing another in reasonable fear of imminent serious bodily injury.

\*\*\*

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

D.M. contends that A.N.B. provided no evidence to the court other than her testimony that the rape or other sexual crime occurred. We find no merit to that argument because A.N.B.'s testimony, found credible by the trial court,

_____

to the credibility determinations of the trial court as to witnesses who appeared before it." **Fonner v. Fonner**, 731 A.2d 160, 161 (Pa. Super. 1999) (quoting **Miller on Behalf of Walker v. Walker**, 665 A.2d 1252, 1255 (1995)). We also note that the preponderance of evidence standard is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence. **Commonwealth v. Brown**, 786 A.2d 961, 968 (Pa. 2001).

[5] **Snyder v. Snyder**, 629 A.2d 977, 982–83 (Pa. Super. 1993) ("[T]he Protection from Abuse Act does not seek to determine criminal culpability.")

was alone sufficient evidence to find that the events occurred as she described them. This finding by the trial court is sufficient to sustain the granting of the PFA Petition.

Nonetheless, we will address D.M.'s contention that the evidence is insufficient to establish that A.N.B. was in fear of imminent serious bodily injury. He points out that he lives almost 200 miles from her address in Allegheny County and 79 miles from her address in Mifflin County, and that A.N.B. could not have been in reasonable fear of him because he lives too far away to be a real threat to her.

The Act's purpose "is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." **Buchhalter v. Buchhalter**, 959 A.2d 1260, 1262 (Pa. Super. 2008). Its purpose is also to react to early signs of abuse and prevent more serious abuse from occurring; PFA orders are used for "risk control." **Snyder v. Snyder**, 629 A.2d 977, 986 (Pa. Super. 1993). In determining whether the victim is in reasonable fear, the "court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury[,]' ... [appellant's intent] is of no moment." **Buchhalter**, 959 A.2d at 1263 (quoting **Raker v. Raker**, 847 A.2d 720, 725(Pa. Super. 2004)).

In this case, D.M.'s prior sexual abuse of A.N.B., along with his call in which he told her he knew where she lived and that she should not be

surprised if she saw him sometime, allowed for her to reasonably believe that he was a threat to her safety.

Accordingly, for all of the foregoing reasons, we affirm the trial court's order entered April 16, 2018, granting A.N.B.'s petition for a final PFA order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/11/2019