## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gregory DiPaolo and Kathleen DiPaolo, :
                            Appellants    :
                                        :
                    v.                  :
                                        :
Zoning Hearing Board of        :    No. 1815 C.D. 2016
Bensalem Township            :    Argued: June 7, 2018


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                      FILED: July 18, 2018


        Gregory DiPaolo and Kathleen DiPaolo (the DiPaolos) appeal from the Bucks County Common Pleas Court's (trial court) October 13, 2016 order denying their appeals from the Bensalem Township (Township) Zoning Hearing Board's (ZHB) November 6, 2014 decisions that upheld two April 14, 2014 Notices of Violation (Enforcement Notices). There are two issues before this Court: (1) whether the trial court erred by affirming the ZHB's decision; and (2) whether the Township's enforcement action was barred by laches, estoppel, vested rights or justifiable reliance doctrines. After review, we affirm.

        In 2004, Article III, Section 58 of Chapter 232 of the Township's Code of Ordinances (Code) (Zoning Ordinance)[1] set forth the Township's floodplain regulations. *See* Reproduced Record (R.R.) at 174a-182a. The purpose of the

---

[1] Section 232-58 of the Zoning Ordinance was repealed on February 9, 2015 and replaced by Code Chapter 14, Floodplain Management. *See* Reproduced Record (R.R.) at 8a (Trial Ct. Op. at 2 n.1). Section 232-58 of the Zoning Ordinance was in effect when the Enforcement Notices were issued.

Township's floodplain regulations was "to prevent the loss of property and life, the creation of health and safety hazards, the disruption of commerce and governmental services, [and] the extraordinary expenditure of public funds for flood protection and relief[.]" Section 232-58(1) of the Zoning Ordinance, Zoning Ordinance § 232-58(1) (R.R. at 174a). To that end, the floodplain regulations, *inter alia*, prohibited the construction and development of property located within the floodplain[2] without zoning, land development and building permits.[3] *See* R.R. at 174a-182a. Section 103-21 of the Code further required a Township-issued permit for any change to property that has the potential to allow surface waters to erode the land. *See* R.R. at 171a. Section 232-58(5) of the Zoning Ordinance authorized floodplain development only if "the applicant demonstrate[d] that the effect on flood heights [was] fully offset by accompanying improvements." Zoning Ordinance § 232-58(5) (R.R. at 177a).

In June 2004, the DiPaolos purchased the vacant property located at 3026 Century Lane, in Bensalem, Bucks County, Pennsylvania (Property). They applied for a variance from the floodplain regulations necessary to construct a 2,035 square-foot single-family dwelling partially within the 100-year floodplain of the Poquessing Creek.[4] *See* R.R. at 28a, 35a. The ZHB granted the variance on December 2, 2004,[5] based in part upon representations by the DiPaolos' civil

---

[2] The term "identified floodplain area" was defined in Section 232-58(4)c.3 of the Township's Zoning Ordinance as "the floodplain area specifically identified in this chapter as being inundated by the 100-year flood." Zoning Ordinance § 232-58(4)c.3.

[3] Section 232-58(5)b.1 of the Zoning Ordinance expressly provides that "[t]he uses permitted in the floodplain areas shall be permitted provided that . . . [they] do not require or allow the placement or erection of any structure, temporary or permanent." R.R. at 178a.

[4] The DiPaolos' witness represented to the ZHB that "[a]pproximately 65% of the house footprint is within the 100[-]year flood[]plain; this amounts to 1,322 square feet." R.R. at 35a. In addition, the DiPaolos supplied the ZHB with drawings reflecting where Poquessing Creek is located to the rear of the Property. *See* R.R. at 34a-35a.

[5] In its December 2, 2004 decision, the ZHB explained: "The grant of the aforesaid variances does not relieve the [DiPaolos] from complying with all other requirements of the [Zoning Ordinance], the [Township's] Subdivision and Land Development Ordinance, the

2

engineer Joseph H. Mixner (Mixner) that the structure "would have an infinitesimal effect on the downstream properties[,]" R.R. at 29a, and Mixner's September 2004 Site Development Plan (Plan).[6] *See* R.R. at 26a-36a, 192a, 195a. In February 2005, the DiPaolos obtained building permits based upon Mixner's December 2004 dwelling construction plan and commenced construction. *See* R.R. at 35a-36a, 196a.

On July 20, 2005, the Township's Engineering Inspector Quinton Nearon (Nearon) examined the DiPaolos' constructed dwelling for use and occupancy, and issued a report and set an escrow amount related to work the DiPaolos needed to complete and/or correct in order to have the remainder of the Property comply with the Zoning Ordinance. Relevant to this appeal were the Township's requirements for an as-built plan reflecting a rear deck and additional stone areas not included in the DiPaolos' Plan, and zoning approval for the deck. *See* R.R. at 191a. Nearon supplied a copy of his inspection report to the DiPaolos on July 21, 2005, with a letter stating that the escrow would be refunded (less a 10% administrative fee) "after a written request is made and the work has been verified."[7] R.R. at 193a. The Township issued a use and occupancy permit for the DiPaolos' house on July 26, 2005, and the DiPaolos moved in. *See* R.R. at 210a-212a.

On March 11, 2014, Nearon inspected the Property at the request of the Township's Director of Building and Planning/Zoning Officer Matthew K. Takita (Takita), and submitted a March 19, 2014 report to Takita in which he stated that, based upon his examination of the Property and the Township's records:

---

[Township's] Building Code and Fire Codes and all other applicable state, county and [T]ownship ordinances and regulations." R.R. at 31a.

[6] The Plan depicted the floodplain lines. *See* R.R. at 195a.

[7] By December 22, 2010 letter, the Township authorized the release of the street opening portion of the DiPaolos' escrow, stating: "The completed work associated with the escrow has been checked and appears to be satisfactory." R.R. at 211a, 213a. The letter did not reference the escrow amounts related to the rear deck or stoned areas. *See* R.R. at 213a.

[N]o new permits were applied for by the [P]roperty owner[s] for any exterior work on the [P]roperty since the time of the use and occupancy report. Based on the occupancy report, there were several items noted that were to be shown on a revised plan and submitted. During this most recent visit there were several additional improvements to the [P]roperty that were not listed at the time of the occupancy inspection. The improvements consist of accessory structures, a screened sitting area and a stoned and paved area.

R.R. at 183a. In his report, Nearon specifically outlined the following violations of the Township's Zoning Ordinance which are pertinent to this appeal: (1) the rear deck evident at the time of occupancy in 2005 was built in the floodway[8] and floodplain without ZHB approval or variance; (2) accessory structures (*i.e.*, sheds) were placed within the floodplain between 2005 and 2010 without permits or ZHB approval; (3) paving/stone areas were installed within the floodway between 2005 and 2010 without permits; and (4) a screened gazebo was constructed on the Property within the floodway between 2005 and 2010 without permits. *See* R.R. at 185a; *see also* R.R. at 62a-64a.

Based on Nearon's report, on April 14, 2014, the Township issued two Enforcement Notices to the DiPaolos.[9] In the first Enforcement Notice, the Township's construction code official stated that the sheds on the Property violated Section 103-21 of the Township's Code because the DiPaolos failed to obtain permits for them (Shed Enforcement Notice). *See* R.R. at 170a-171a. The Township informed the DiPaolos that "[t]o eliminate the . . . violations[,] you must . . . [a]pply for and obtain permits for all sheds on [the P]roperty[.]" R.R. at 170a.

---

[8] Section 232-58(4)c.3 of the Township's Zoning Ordinance defined "floodway" as "the designated area of a floodplain required to carry and discharge flood waters of a given magnitude," and reflects that "[f]or purposes of this section, the floodway shall be capable of accommodating a flood of the 100-year magnitude." Zoning Ordinance § 232-58(4)c.3 (R.R. at 176a).

[9] The Township issued a third Enforcement Notice for trash and debris removal that was resolved. *See* R.R. at 168a-169a.

In the second Enforcement Notice, Takita asserted the following violations of Section 232-58 of the Code's Zoning Ordinance (Floodplain Enforcement Notice):

- Rear Deck – Built on the rear of the dwelling within the floodway and floodplain and existed at the time of occupancy, but did not have [ZHB] approval or a variance.

- Accessory Structures – Structures placed on the Property without permits or approval from [ZHB], and are located within the floodplain and front yard setback.

- Paving/Stone – Installed without permits and appears to be located within the floodway.

- Screened Gazebo – Constructed without permits and is located within the floodway.[10]

*See* R.R. at 173a; *see also* R.R. at 172a-182a. The Floodplain Enforcement Notice again informed the DiPaolos, *inter alia*, that an as-built plan was still required for the rear deck and paving/stone areas not depicted on the Plan. *See* R.R. at 173a. The Township instructed: "To abate said violation(s)[,] you must: REMOVE CONSTRUCTION WITHIN THE FLOODPLAIN AND FLOODWAY AND OBTAIN APPROVAL FROM THE [ZHB] FOR CONSTRUCTION/IMPROVEMENTS WITHIN THE FLOODPLAIN AND FLOODWAY." R.R. at 173a.

On May 15, 2014, the DiPaolos timely appealed from the Enforcement Notices to the ZHB and also requested a variance from the Zoning Ordinance's terms. *See* R.R. at 161a-163a. The DiPaolos filed an amended appeal on June 19, 2014, seeking relief from the shed permit requirement and from the determination that they impermissibly placed structures within the floodplain. *See* R.R. at 157a-160a.

---

[10] The Floodplain Enforcement Notice also contained a grading violation (*i.e.*, grading within the floodway and floodplain which neither the Township engineer nor the ZHB approved), which the Township withdrew at the ZHB hearing. *See* R.R. at 151a.

5

Therein, the DiPaolos asserted: "We are in compliance [with] all [Township Zoning] Ordinances and these [Enforcement] Notices were issued in error. We have lived on the [P]roperty for many years and have been in contact with the Township over other administrative issues and these items were never raised before." R.R. at 158a. They further declared: "These [Enforcement N]otices . . . were untimely or the issues have been waived by the Township. We are prejudiced and will suffer a hardship if they are enforced now." R.R. at 159a.

The ZHB conducted public hearings on October 2 and November 6, 2014, at which Nearon and Takita testified. *See* R.R. at 37a-156a. On November 6, 2014, the ZHB voted to deny the DiPaolos' appeals and uphold the Enforcement Notices. *See* R.R. at 25a, 149a-153a. The ZHB ratified its November 6, 2014 decisions at its December 4, 2014 meeting. *See* R.R. at 23a-25a. The DiPaolos appealed from the ZHB's decision to the trial court. On October 13, 2016, the trial court denied their appeal and affirmed the ZHB's decision. *See* R.R. at 18a. The DiPaolos timely appealed to this Court.[11]

The DiPaolos argue that the trial court erred by affirming the ZHB's November 6, 2014 decisions. They specifically claim that the trial court's decision was arbitrary, capricious, an abuse of discretion and contrary to law because: (1) there was no competent evidence that the DiPaolos violated the Zoning Ordinance; (2) the evidence did not prove violations to a reasonable degree of certainty; (3) the ZHB considered testimony from non-expert witnesses; (4) the ZHB considered testimony from witnesses unqualified to render competent evidence of flood zone regulation and zoning ordinance violations; (5) the ZHB considered documents and

---

[11] "In an appeal from a trial court's decision in a zoning enforcement proceeding, our review is limited to determining whether the trial court committed an abuse of discretion or error of law." *Borough of W. Conshohocken v. Soppick*, 164 A.3d 555, 559 n.4 (Pa. Cmwlth. 2017) (quoting *Loganville Borough v. Godfrey*, 59 A.3d 1149, 1151 n.4 (Pa. Cmwlth. 2012)).

The trial court issued its opinion on December 27, 2016. *See* R.R. at 7a-17a.

pictures that did not constitute competent evidence of flood zone regulation and zoning ordinance violations; and (6) the ZHB rendered a decision without competent evidence concerning the size and type of structures that require permits.[12]

Initially, "the goal of an enforcement proceeding initiated under Section 616.1 of the [the Pennsylvania Municipalities Planning Code] is to ensure compliance with a zoning ordinance such that the community is protected." *Borough of Bradford Woods v. Platts*, 799 A.2d 984, 992 (Pa. Cmwlth. 2002). "To prove a violation of an ordinance, the municipality [must] offer evidence of facts establishing that the violation occurred." *Commonwealth v. Marcus*, 690 A.2d 842, 845 (Pa. Cmwlth. 1997). Here, construction and development of property located within the floodplain necessitated zoning, land development and building permits. The Zoning Ordinance defined construction and development as "any manmade change to . . . buildings and other structures, . . . grading, paving, . . . or the storage of equipment or materials." R.R. at 174a. Thus, in order for the Township to establish that the DiPaolos violated Section 103-21 of the Code and Section 232-58 of the Zoning Ordinance, it had to prove: (1) the Property is located in a floodplain; (2) the DiPaolos constructed and developed (*i.e.*, added structures or materials) on the Property's floodplain areas; and (3) the DiPaolos failed to obtain permits to do so.

At the ZHB hearings in the instant matter, the Township offered the Enforcement Notices, Nearon's March 19, 2014 report with attachments including

---

[12] The DiPaolos also argue on appeal to this Court that the Enforcement Notices were invalid and void as a matter of law because they violated Section 616.1(c)(3) of the Pennsylvania Municipalities Planning Code, which requires that an enforcement notice state "[t]he specific violation with a description of the requirements which have not been met, citing in each instance the applicable provisions of the ordinance." Act of July 31, 1968, P.L. 805, *as amended*, added by Section 60 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10616.1(c)(3). However, because the DiPaolos did not raise this issue before the ZHB or the trial court, or in its Concise Statement of Issues Raised on Appeal (*see* R.R. at 5a, 10a, 159a, 163a), it is waived. *Hawk v. City of Pittsburgh Zoning Bd. of Adjustment*, 38 A.3d 1061, 1066 n.7 (Pa. Cmwlth. 2012) ("[I]ssues or arguments not raised before the [ZHB] are waived.").

7

street and aerial photographs of the Property, the violation list, the 2005 use and occupancy inspection report, the Plan, and photographs of the Property taken in June 2014. *See* R.R. at 57a; *see also* R.R. at 183a-201a. The DiPaolos' counsel (Counsel) admitted to the ZHB that the gazebo and paving/stone violate the Zoning Ordinance,[13] but disputed that the deck and sheds violated the floodplain regulations. *See* R.R. at 145a, 147a. Counsel specifically argued that the DiPaolos' deck was built with the house and was known to the Township, and the sheds were at street level (not in the flood zone) and, as small gardening sheds, were not of the size the Township requires a permit to construct and place on the Property. *See* R.R. at 145a-147a.

Nearon and Takita testified for the Township. Nearon summarized that he has been employed by O'Donnell and Naccarato since 1988, and has been assigned to conduct the Township's municipal inspections and zoning and land reviews since 1990.[14] *See* R.R. at 58a-59a. Nearon generally described occupancy inspections:

> Basically you have pass and fails. Any issues that are noted that are a problem on the property would be described or if there [are] any kind of violations. If there [are] any changes to the approved plans, we would require an as-built plan. Basically what ends up happening, if there [are] any noted items, we require an escrow to be posted for those items to be completed.

R.R. at 73a; *see also* R.R. at 74a, 85a, 191a.

Nearon recounted that he conducted the Property's July 2005 use and occupancy inspection and submitted his report to the Township, and the Township

---

[13] At the hearing, the ZHB declared the separately-listed gazebo and paving/stone violations a single violation. *See* R.R. at 151a.

[14] Nearon is not an engineer and, although he is not a certified surveyor, he has been trained in surveying and has been conducting the Township's engineering inspections for 25 years. *See* R.R. at 91a-92a.

issued a use and occupancy permit because there were no impediments related to the house. *See* R.R. at 85a-86a, 90a, 103a. He reported that there were, however, violations related to the remainder of the Property. *See* R.R. at 103a. Specifically, although not reflected on the DiPaolos' approved Plan, he observed during his 2005 occupancy inspection that a rear deck had been built onto the DiPaolos' house in the floodway and floodplain. *See* R.R. at 65a-66a, 74a, 96a, 98a-100a, 195a-196a. Nearon added:

> These are [P]lans that were submitted by the [DiPaolos]. We determined where the floodplain line existed at the time of the occupancy. During our occupancy inspection, we found that there was [sic] numerous things that were revised or changed from the original approved [P]lan [for] which we [] required an as-built plan to be submitted. We never did receive that [as-built] plan, so based on the existing information that we already had present, we determined that there was [sic] numerous violations for placements of structures, as well as in the floodplain.

R.R. at 64a.

Nearon described that his floodplain determination was made "per plans that we have on file for the [P]roperty," particularly Mixner's 2004 Plan which depicts the floodway and floodplain boundaries. R.R. at 67a; *see also* R.R. at 68a-69a, 77a-80a, 84a, 87a-89a, 195a. Nearon did not survey the Property. *See* R.R. at 108a. He explained:

> [Nearon] A Based on elevations, [the Federal Emergency Management Agency (FEMA)[15]] has established a floodway. They established a 100-year floodplain, as well as outside of that flood -- 100-year floodplain for a 500-year floodplain, and it is all based on elevations of the existing grounds.

[15] According to Section 232-58(4)c.1 of the Zoning Ordinance, the Township's mapped floodplain areas are those included in the Poquessing Creek Flood Hazard Maps dated May 18, 1977, No. 3L4683, the Flood Insurance Study (FIS) dated April 2, 2002, and maps FEMA prepared for the Township. *See* R.R. at 175a.

9

[Township's Counsel] Q There [are] also designations to the right that indicate 100-year floodplain, 500-year floodplain. Can you explain to the [ZHB] what those designations are?

A Basically like again FEMA has established where the floodplain for the 100[-]year and 500-year lines are for those elevations. These lines in this [P]lan are based on the existing elevations on the [P]roperty that [Mixner] established and planted on the [P]roperty for the submission.

Q Now, is it your review of this document, along with your visual site inspection, [t]hat lead to your report and the notices of violation?

A Correct.

R.R. at 77a-78a. Nearon continued:

[In] July of 2005 when we were at the [P]roperty for our occupancy inspection we noticed the additional items that were listed on the report that I already stated in relationship to where they are placed on the [P]roperty, as well as the dwelling. Based on that and using the lines that are shown on the [P]lan[], it was determined that those areas were being built inside the 100-year floodplain, which is in violation of [Section 232-58 of the Zoning Ordinance].

R.R. at 78a-79a. He expounded:

Part of the deck is in the floodway. It's entirely within the floodplain because of the location of where the floodplain line is for the 100-year floodplain. The structures of the rear of the creek would be in this area here which, again, would be in the floodway line which is this side toward the Poquessing Creek. [In t]he aerial [photograph] of [the Property from] 2014[,] you see the garage or shed that we were stating for a structure.

. . . .

That would be in this location here which, again, would be within the 100-year floodplain [] area line.

R.R. at 89a.

10

Nearon pronounced that neither the rear deck or the sheds were included in the Plan. *See* R.R. at 80a-81a, 109a. He determined during his March 2014 inspection that the DiPaolos never submitted as-built plans to the Township for the deck as required. *See* R.R. at 65a, 80a-81a, 112a. Nearon also concluded that, by his comparison of aerial photographs of the Property from 2005 and 2010, the sheds were installed in the Property's floodplain. *See* R.R. at 67a-69a, 80a-81a, 186a, 189a. Nearon testified that he reviewed the Township's files and did not find any as-built plans or permits for a rear deck, or permits for the sheds. *See* R.R. at 68a, 70a, 80a-81a, 94a-95a. He recalled that the only variance for the house was issued in 2004, and it did not include the deck or sheds. *See* R.R. at 90a.

Nearon explained that he obtained the 2005 and 2010 aerial photographs from the Township's aerial photography program available at the Township building, that allowed him to zoom in on the Property.[16] *See* R.R. at 66a, 69a. He described that a 2007 Google street view photograph showed that there were no sheds on the Property at that time. *See* R.R. at 69a-70a. Nearon represented that the 2010 aerial photograph showed several additional structures on the Property that were not evident in the 2005 photograph. *See* R.R. at 70a-71a, 186a, 189a. In addition, he offered a 2014 Google aerial photograph of the deck and sheds in the Property's floodplain at the time he completed his March 2014 report. *See* R.R. at 71a-73a, 190a. Nearon also identified four photographs taken by the Township's Building and Planning Department in June 2014 depicting the rear deck and the sheds at the Property. *See* R.R. at 81a-84a, 197a-201a.

Takita testified that he is a registered architect certified in building construction who has served as the Township's Director of Building and Planning for

---

[16] The DiPaolos lodged an objection to the aerial photographs attached to Nearon's report on the basis that they were not produced in response to their June 2014 right-to-know request. *See* R.R. at 57a-58a. The DiPaolos expounded upon a purported document request. The Board noted the objection, but later admitted the photographs into the record. *See* R.R. at 57a, 141a.

approximately 22 years.[17] *See* R.R. at 113a-114a. He described that his responsibilities include conducting "zoning reviews which would be floodplain." R.R. at 114a. Takita explained that since Nearon is a consultant, Takita issues enforcement notices based on findings made during Nearon's inspections. *See* R.R. at 114a. Takita confirmed that he reviewed Nearon's March 19, 2014 report and the attachments and, after determining that the information therein was accurate, he issued the Enforcement Notices. *See* R.R. at 115a.

Takita explained that site inspections were conducted during the construction of the DiPaolos' home which passed final inspection upon its completion. *See* R.R. at 115a-116a, 121a, 124a. Takita stated that he issued the 2005 use and occupancy permit for the DiPaolos' dwelling, which he understood was permitted despite the Property's outstanding zoning issues. *See* R.R. at 116a, 118a, 120a-125a, 210a-212a. He recounted that his assessment that the DiPaolos constructed and developed in the floodplain was based on how the floodplain aligned with their Plan. *See* R.R. at 125a. Takita confirmed that although the deck was evident in 2005, and the ZHB notified the DiPaolos that it required a variance because it was located in the floodplain, the DiPaolos never obtained a variance. *See* R.R. at 127a. He also verified that there were no Township permits on file for the DiPaolos' sheds, despite that they are located in the floodplain. *See* R.R. at 127a-128a.

At the hearing, the ZHB declared that the sheds were located in the floodway.[18] *See* R.R. at 148a, 150a. Accordingly, the ZHB voted to deny the

---

[17] Takita is not a surveyor or engineer. *See* R.R. at 120a.

[18] ZHB Member Albert Champion stated, based upon his review of the evidence:

> I would even say that the shed that is here -- because the house, corner of the house, is the floodway, this shed is over in here which would also be in the floodway, so it is not just the gazebo and the deck. It would also be that second shed down here because at some point the floodplain is in the street and the floodway is in the setback. So

DiPaolos' appeals from the gazebo/paving and stone, and shed permit violations. The ZHB also denied the DiPaolos' appeal from the deck violation. However, the ZHB's solicitor informed the DiPaolos that the ZHB's "denials . . . [did] not preclude [them] from filing an application for a variance or other relief, particularly [for] the deck."[19] R.R. at 152a.

"In a land use proceeding, the [ZHB] is the ultimate fact-finder and the exclusive arbiter of credibility and evidentiary weight." *Joseph v. N. Whitehall Twp. Bd. of Supervisors*, 16 A.3d 1209, 1218 (Pa. Cmwlth. 2011). Based upon the evidence in the instant matter, the ZHB denied the DiPaolos' appeal, stating that the Shed Enforcement Notice "requiring permits for all sheds on the subject [P]roperty including the sitting area in rear yard is established and confirmed." R.R. at 24a. The ZHB also denied the DiPaolos' appeal and ruled that the Floodplain Enforcement Notice "alleging violations of floodplain regulations regarding rear deck, accessory structures, paving/stone and screened gazebo is established and confirmed." R.R. at 23a.

---

**unless the shed is on the streets, it's in the floodway**. It is about 30 feet from the side of the house is where the floodway – I'm sorry -- the floodplain hits the four-foot setback and probably about 60 feet is where the floodway hits the street. And that shed is definitely not -- I don't even think that that shed would be a variance for [sic] as well.

R.R. at 148a (emphasis added).

[19] The ZHB's solicitor counseled the ZHB:

> The problem that I have with [the deck] is if it's in the floodway as opposed to the floodplain, then this [ZHB] couldn't grant relief. So it would seem that the issue with just the deck might be resolved or might have to wait [sic] an application . . . for a variance, and then it would have to be reviewed and determined if this [ZHB] even had jurisdiction to grant that.

R.R. at 147a-148a.

On appeal to the trial court, the DiPaolos asserted that the Township's evidence was insufficient to establish that the deck and the sheds violated the Code or the Zoning Ordinance, particularly because Nearon and Takita were not qualified to provide expert testimony. On that issue, the trial court concluded:

> Pennsylvania Rule of Evidence 702 provides that a witness qualified as an expert by 'knowledge, skill, experience, training, or education may testify in the form of an opinion if the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson[;] . . . will help the trier of fact understand the evidence or to determine a fact in issue; and the expert's methodology is generally accepted in the relevant field.' Pa.R.E. 702.
>
> [] Takita and [] Nearon clearly established their qualifications on the record. [] Takita has held the position of Director of Building and Planning for the Township for twenty-two years. [] Takita also testified that he is a registered architect and holds several certifications in Pennsylvania for building construction. [] Nearon works as an engineering inspector, performs inspections and zoning and land reviews for the Township and has completed numerous engineering inspections for the Township since 1990. Both witnesses have decades of experience in their respective fields, described their relevant experience and knowledge on the record and were therefore appropriately considered qualified by the [ZHB] to offer their opinions as experts.

R.R. at 12a. This Court finds no error in the trial court's reasoning or conclusion.

Moreover, Section 232-58(4)e.a of the Zoning Ordinance provides:

> **Initial interpretations of the boundaries of the mapped** and soils **floodplain areas shall be made by the applicants['] engineer**, surveyor and/or soils consultant and submitted to the Zoning Officer and Township Engineer for their review. **Should a dispute arise concerning the boundaries of any of the areas, the [ZHB] shall make the necessary determination**.

14

R.R. at 177a (emphasis added). Here, as Section 232-58(4)e.a of the Zoning Ordinance mandates, Mixner made the floodplain determinations upon which Nearon and Takita relied in their assessments and testimony. Further, the DiPaolos do not cite to any authority, and this Court found no requirement in Section 232-58 of the Zoning Ordinance, that a surveyor or engineer must testify about such matters. *See MarkWest Liberty Midstream & Res., LLC v. Cecil Twp. Zoning Hearing Bd.*, 102 A.3d 549 (Pa. Cmwlth. 2014) (wherein this Court ruled that it is an error of law for a ZHB to require expert reports or testimony in the absence of ordinance language to that effect). Under such circumstances, this Court holds that the ZHB did not err by basing its decision on Nearon's and Takita's testimony.

Regarding the DiPaolos' challenge to the other evidence the ZHB relied upon in making its decision that the DiPaolos violated the Township's floodplain regulations, the trial court held:

> Specifically, [the DiPaolos] assert that the use of Google and [geographic information system (]GIS[)] maps to identify which structures are in the floodplains is unacceptable because such maps are not listed in Section 232-58(4)[e.a] of the Zoning Ordinance[]. However, Section 232-58(4)[e.a of the Zoning Ordinance] does not exhaustively list what maps or resources should be used for interpreting the boundaries of floodplain areas. This [s]ection merely states which parties should make initial floodplain interpretations. Additionally, . . . the [ZHB] did not rely solely on the Google and GIS maps in denying [the DiPaolos'] appeal.

R.R. at 13a. Further, relative to the DiPaolos' contention that they did not have to obtain permits to place the small sheds on the Property, the trial court declared:

> [T]he applicable [Zoning] Ordinances do not exclude particular structures based on their size. For example, Section 232-58 [of the Zoning Ordinance] states '[**n**]**o** structure shall be located, relocated, constructed . . . within the floodplain . . . . Zoning, land development and building permits shall be required before any construction or

> development shall be undertaken[.]' [R.R. at 174a] (emphasis added). Further, the [ZHB] did not substantively address [the DiPaolos'] argument regarding the size of the structures because the [ZHB] had already heard testimony that the structures were indisputably within the floodplain, requiring permits regardless of the characteristics of the structures.

R.R. at 14a. The DiPaolos provided no evidence to the contrary. Accordingly, this Court finds no error in the trial court's conclusions.

Because substantial record evidence supports the ZHB's determination that the DiPaolos constructed and/or placed the deck, sheds, paved/stoned areas and gazebo in the Property's floodplain without necessary permits or variances, the trial court properly upheld the ZHB's November 6, 2014 decisions.

The DiPaolos argue in the alternative that, due to the Township's delay in enforcing the Code and the Zoning Ordinance, the Enforcement Notices are barred by laches, estoppel, vested rights and justifiable reliance doctrines. They specifically contend that the Township did not issue violation notices for nearly a decade despite its full knowledge of the DiPaolos' additions to their Property; allowed the DiPaolos to pay for, erect and furnish the deck with the Township's knowledge; and knew or should have known that the DiPaolos would rely on the Township's acquiescence. Despite that the DiPaolos preserved those issues before the ZHB, the ZHB did not specifically address them in its decision.

Under Pennsylvania law, "[f]or a party to prevail on the defense of laches, it must prove both inordinate delay and prejudice from that delay." *Springfield Twp. v. Kim*, 792 A.2d 717, 720 (Pa. Cmwlth. 2002) (quoting *Richland Twp. v. Prodex, Inc.,* 634 A.2d 756, 761 (Pa. Cmwlth. 1993)). "Laches may be imputed to a municipality that has stood by and permitted large expenditures to be made upon the faith of municipal consent informally or tacitly given." *Springfield Twp.*, 792 A.2d at 720.

16

A variance by estoppel is one of three labels assigned in Pennsylvania land use/zoning law to the equitable remedy precluding municipal enforcement of a land use regulation. Our courts have generally labeled the theory under which a municipality is estopped: (1) a 'vested right' where the municipality has taken some affirmative action such as the issuance of a permit; [(2)] a 'variance by estoppel' where there has been municipal inaction amounting to active acquiescence in an illegal use; or, [(3)] 'equitable estoppel' where the municipality intentionally or negligently misrepresented its position with reason to know that the landowner would rely upon that misrepresentation. Estoppel under these theories is **an unusual remedy granted only in extraordinary circumstances and the landowner bears the burden of proving his entitlement to relief**.

*Vaughn v. Zoning Hearing Bd. of the Twp. of Shaler*, 947 A.2d 218, 224-25 (Pa. Cmwlth. 2008) (quoting *In re Kreider*, 808 A.2d 340, 343 (Pa. Cmwlth. 2002) (citations and footnote omitted)) (emphasis added).

Except for the characterization of the municipal act that induces reliance, all three theories share **common elements of good faith action on the part of the landowner**: 1) that he relies to his detriment, such as making substantial expenditures, 2) based upon an innocent belief that the use is permitted, and 3) that enforcement of the ordinance would result in hardship, ordinarily that the value of the expenditures would be lost.

*Kreider*, 808 A.2d at 343 (emphasis added).

This Court has ruled:

There are five factors relevant to whether a ZHB should grant a variance by estoppel.

Such variances are appropriate when a **use does not conform** to the zoning ordinance **and** the property owner establishes **all** of the following: (1) a long period of municipal **failure to enforce** the law, when the municipality knew or should have known of the violation, in conjunction with some form of active acquiescence in the illegal use; (2) the

17

> **landowner acted in good faith <u>and</u> relied innocently** upon the validity of the use throughout the proceeding; (3) the **landowner has made substantial expenditures** in reliance upon his belief that his use was permitted; **and** (4) **denial of the variance would impose an unnecessary hardship** on the applicant.
>
> *Borough of Dormont v. Zoning Hearing Bd. of the Borough of Dormont*, 850 A.2d 826, 828 (Pa. Cmwlth. 2004) (citations omitted). For [a]pplicants to prevail under a variance by estoppel theory, they must prove the essential factors by clear, precise and unequivocal evidence.

*Pietropaolo v. Zoning Hearing Bd. of Lower Merion Twp.*, 979 A.2d 969, 980 (Pa. Cmwlth. 2009) (bold and underline emphasis added). Moreover, "[variance by estoppel does] not attach where '[t]he applicant deviates from that which has been approved by government officials.'" *Randolph Vine Assoc. v. Zoning Bd. of Adjustment of Phila.*, 573 A.2d 255, 259 (Pa. Cmwlth. 1990) (quoting *Petrosky v. Zoning Bd. of the Twp. of Upper Chichester*, 402 A.2d 1385, 1389 (Pa. 1979)). Finally, in *Appeal of Crawford*, 531 A.2d 865, 868 (Pa. Cmwlth. 1987), this Court held that it "*may* also consider whether there is sufficient evidence to show that the use is a threat to the public health, safety or morals." (Emphasis added).

It is undisputed in the instant matter that the Township issued the DiPaolos' use and occupancy permit on July 26, 2005, despite that the rear deck and some stoned areas[20] were visible on Nearon's July 20, 2005 inspection. *See* R.R. at 194a, 212a. Because those additions were not included in the Plan, Nearon recommended that the DiPaolos should submit as-built plans and post escrow. The DiPaolos were informed to post escrow "to obtain [their] occupancy permit." R.R. at 210a. They were also notified that they needed a permit or variance for the deck. *See*

---

[20] It is not clear based on this record whether the additional stone areas mentioned in Nearon's inspection report were those included in the Floodplain Enforcement Notice for which an as-built plan was needed.

18

R.R. at 210a-211a. The DiPaolos posted escrow and were given a use and occupancy permit, but they never submitted as-built plans, and they requested the deck variance for the first time in their appeal from the Floodplain Enforcement Notice. There is no record evidence that the paved/stone areas, sheds or gazebo at issue here were evident on the Property during Nearon's 2005 inspection.

This Court acknowledges that the Township issued the use and occupancy permit to the DiPaolos notwithstanding that the deck violated the Township's floodplain regulations. The DiPaolos cite to Section 232-763 of the Zoning Ordinance regarding the Township's use and occupancy permit obligations.[21] *See* DiPaolo Br. at 20. Section 232-763(1)a.(1) of the Zoning Ordinance requires landowners to obtain use permits for "any structure hereinafter constructed for which a building permit . . . is required[.]" Zoning Ordinance § 232-763(1)a.(1). Section 232-763(1)c.(1) of the Zoning Ordinance specifies: "No use permit shall be issued until the Zoning Officer has certified that the proposed use of land or . . . proposed structure complies with the [Township's Zoning Ordinance]." Zoning Ordinance § 232-763(1)c.(1). Section 232-763(3)a.(1) of the Zoning Ordinance requires occupancy permits "prior to . . . [o]ccupancy of any structure, hereinafter constructed for which a building permit is required[.]" Zoning Ordinance § 232-763(3)a.(1). Section 232-763(3)c.(2) of the Zoning Ordinance provides: "No occupancy permit shall be issued until the Zoning Officer has inspected and certified that the use of the

_____

[21] Section 232-763 of the Zoning Ordinance was not included in this record. However, the law is well settled that "'[c]ourts may take judicial notice of local government ordinances.' *In re Appeal of Moyer*, 978 A.2d 405, 407 n.2 (Pa. Cmwlth. 2009); *see also* 42 Pa.C.S. § 6107(a) ('[t]he ordinances of municipal corporations of this Commonwealth shall be judicially noticed')." *Valley Forge Sewer Auth. v. Hipwell*, 121 A.3d 1164, 1168 n.5 (Pa. Cmwlth. 2015).

The Township's Zoning Ordinance is found online at: https://library.municode.com/pa/bensalem/codes/code_of_ordinances?nodeId=PTIIGELE_CH232ZO_A RTXVIAD_S232-763ZOPERE (last viewed 6/26/18).

land or structure is in compliance with the [Township's Zoning Ordinance]." Zoning Ordinance § 232-763(3)c.(2).

The DiPaolos' use and occupancy permit represents on its face that it was issued for the "single family dwelling" at the Property, *see* R.R. at 212a, which was the "structure . . . constructed for which a building permit [. . .] is required," Zoning Ordinance § 232-763(1)a.(1), (3)a.(1). Nearon's July 21, 2005 escrow letter notified the DiPaolos that the deck required a permit or variance. *See* R.R. at 210a-211a. The Township's inspection was based upon the Plan and the dwelling construction plan, which did not depict the deck, and no separate permit was requested or issued for the added deck. Moreover, the record evidence supports the ZHB's determination that the sheds, the paved/stoned areas and the gazebo were not on the Property in 2005, and the issuance of the use and occupancy permit was not an affirmative action by the Township that created vested rights for the DiPaolos.

The DiPaolos claim the Enforcement Notices are barred based on laches, estoppel or justifiable reliance because the Township failed to enforce the Code and the Zoning Ordinance, when it should have known of the violation. This Court acknowledges that the Township did not enforce the DiPaolos' deck violation for nearly ten years and, although it is unclear when the Township became aware of the other violations, may have allowed significant time to pass before issuing the Enforcement Notices. However, the DiPaolos have not offered any basis for this Court to rule that ten years was an inordinate delay, or that they were prejudiced thereby. *Springfield Twp.*[22] Moreover, "mere knowledge of a violation of a zoning

---

[22] *Springfield Township* involved a 14 to 17-year delay. This Court held that since the property owners did not prove prejudice from the delay, the municipality was not barred by laches. This Court further considered:

> [The o]wners have not introduced evidence to prove that they would have complied with the [ordinance] if the [t]ownship enforced [it] earlier. Next, [the o]wners have not introduced evidence to prove that compliance under the . . . [o]rdinance would have differed. Finally,

ordinance does not in and of itself prove that a municipality actively acquiesced in the use of the property." *Spargo v. Zoning Hearing Bd. of the Municipality of Bethel Park*, 563 A.2d 213, 217 (Pa. Cmwlth. 1989); *see also Skarvelis v. Zoning Hearing Bd. of Borough of Dormont*, 679 A.2d 278 (Pa. Cmwlth. 1996). Further, the law requires passage of time "in conjunction with some form of active acquiescence in the illegal use[,]" *Pietropaolo*, 979 A.2d at 980, which the DiPaolos did not prove in this case.

In addition, the DiPaolos clearly did not act in good faith when they purchased the Property that was located in the floodplain and, for those same ten years, they disregarded the Township's notice about the deck violation and continued to add unpermitted sheds, paved/stoned areas and a gazebo to the Property in open disregard to the floodplain regulations. They offered no justifiable reliance under the circumstances. Lastly, the DiPaolos offered no evidence to support their claim that they made large expenditures or were otherwise prejudiced due to their reliance on the Township's purported acquiescence, nor did they prove that they would suffer any hardship, let alone unnecessary hardship,[23] if the variance is denied.

---

> there is no evidence in the record estimating the cost of compliance. [The o]wners also did not establish that they *changed* their position as a result of the [t]ownship's delay.

*Springfield Twp.*, 792 A.2d at 721 n.3.

[23] Unnecessary hardship is created when a property's unique physical circumstances or conditions do not allow the property to be developed in strict conformity to the zoning ordinance and a variance is necessary for the property's reasonable use; however, the hardship cannot be self-inflicted, it cannot alter the essential character of the neighborhood or be detrimental to the public welfare, and it must be the minimum variance necessary to afford relief. *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807 (Pa. Cmwlth. 2005).

Section 232-58(9) of the Zoning Ordinance provides, in relevant part:

> Variance. If compliance with any of the requirements of this section would result in an exceptional hardship for a . . . landowner, the [ZHB] may, upon request, grant relief from the strict application of the requirements. Requests for variances shall be considered by the [ZHB] in accordance with the following:

In essence, the DiPaolos are asking that they be permitted to continue their zoning violations regardless of the public safety concerns related to the floodplain and floodway, and without their engineer providing "technical evidence and documentation demonstrating that the increase in the 100-year flood elevation that will be caused by the proposed construction, development, use or activity will have no adverse effect on downstream properties." Section 232-58(9)b of the Zoning Ordinance, Township Ordinance § 232-58(9)b. The DiPaolos are aware of this

a. No variance shall be granted in the floodway that would cause any increase in the 100-year flood elevation.

b. **No variance shall be granted for any construction, development, use or activity within any floodplain area unless the applicant's engineer presents technical evidence and documentation demonstrating that the increase in the 100-year flood elevation that will be caused by the proposed construction, development, use or activity will have no adverse effect on downstream properties.**

c. No variance shall be granted for any of the other requirements of [S]ection 232-58 [of the Zoning Ordinance], development which may endanger human life.

d. No variance shall be considered unless the applicant has provided the [ZHB] with the following:

1. Land development plans and/or building permit plans which have been previously submitted to [the] Township.

2. Copies of the applicable reviews of these plans by the Department of Environmental Protection, Bureau of Dams, Waterways, and Wetlands, Bucks County Planning Commission, [the] Township Planning Commission, [the] Township Engineer, [the] Township [s]taff and any other agency having review responsibility.

3. Any decisions rendered by the [] Township Council regarding the plans or property under consideration.

e. A variance shall involve only the least modification necessary to provide relief.

R.R. at 181a.

22

requirement from the process they undertook to obtain the 2004 variance to construct their house.

There is no record proof that the Township actively acquiesced in the DiPaolos' unlawful deck or unpermitted sheds. The record is devoid of any evidence that the Township was aware the DiPaolos constructed or installed sheds in the floodplain on the Property without a permit before 2014. Moreover, although it is undisputed that the Township was aware of the DiPaolos' deck before it issued their occupancy permit in 2005, the DiPaolos were clearly notified at that time that they had to obtain a permit or variance for the deck to comply with the Zoning Ordinance, which they did not do. Accordingly, the DiPaolos were aware over the intervening ten years that the deck was unlawful, yet did not take the steps necessary to bring it into compliance. Further, they point to no affirmative act by the Township that led them to believe otherwise. Because the DiPaolos have not proven the necessary criteria, the Enforcement Notices are not barred by laches, estoppel, vested rights or justifiable reliance doctrines.

Based on the foregoing, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gregory DiPaolo and Kathleen DiPaolo, :
Appellants :
:
v. :
:
Zoning Hearing Board of : No. 1815 C.D. 2016
Bensalem Township :

## O R D E R

AND NOW, this 18th day of July, 2018, the Bucks County Common Pleas Court's October 13, 2016 order is affirmed.

_____
ANNE E. COVEY, Judge